## NATIVE VILLAGE OF NOATAK, Plaintiff–Appellant,

v.

## Edgar BLATCHFORD, as Commissioner, Department of Community and Regional Affairs, State of Alaska, Defendant–Appellee.

### No. 93–35380.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1994.

Decided Oct. 28, 1994.

---

Lawrence A. Aschenbrenner, Native American Rights Fund, Anchorage, AK, William E. Caldwell, Alaska Legal Services Corp., Fairbanks, AK, for plaintiff-appellant.

Gary D. Amendola, Asst. Atty. Gen., Juneau, AK, for defendant-appellee.

Before: PREGERSON, CANBY, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Native Village of Noatak ("Noatak") appeals the dismissal, after remand from the United States Supreme Court and this court, of its action against the Commissioner of the Alaska Department of Community and Regional Affairs (the "Commissioner"). Noatak's action on remand alleged that the Commissioner racially discriminated against Noatak by implementing certain regulations under a revenue-sharing statute. The district court dismissed the case as moot because the Supreme Court had ruled that the Eleventh Amendment barred all claims for monetary and other retroactive relief and because the repeal of the statute mooted Noatak's claim for prospective relief. We affirm.

BACKGROUND

In 1980, the Alaska legislature enacted a revenue-sharing statute which provided for annual payments to each "Native village government" located in a community without a state-chartered municipal corporation. Alaska Stat. § 29.89.050 (1984). Under the statute, a "Native village government" included any local governing body organized under the Indian Reorganization Act, 25 U.S.C. § 461 et seq. Appellant Noatak fell within the class benefitted by this legislation.

The state attorney general believed the statute to be unconstitutional. In his view, the Native villages were "racially exclusive groups," not political organizations, and he therefore concluded that awarding funds exclusively to these groups would violate the equal protection provisions of Alaska's Constitution. Accordingly, acting on the attorney general's advice, the Commissioner of the Alaska Department of Community and Regional Affairs expanded the program by implementing regulations under the statute. The regulations provided that all unincorporated communities would be eligible recipients, rather than only unincorporated Native villages. See Alaska Admin.Code § 30.051 (Oct.1981).

Meanwhile, in 1981, the state legislature began to consider revising the revenue-shar-ing statute. In 1985, the legislature finally repealed § 29.89.050 and replaced it with another statute which essentially codified the Commissioner's implementation of the expanded program. See Alaska Stat. § 29.60.140 (1992). The new statute authorized aid to all unincorporated communities and therefore created a new, broader class of recipients. Section 29.60.140 became effective January 1, 1986.

In September 1985, after the new statute had been enacted but before it became effective, Noatak and two other Native villages brought suit in federal district court. The villages sought declaratory and injunctive relief which would require the Commissioner to pay them the money they would have received but for the administrative expansion of the program. They alleged among other things that the Commissioner deliberately expanded the class of eligible recipients under the old statute to include entities other than the Native villages solely because of the villagers' racial identities, thereby improperly diluting the villagers' share of the allocated funds.

The district court initially granted an injunction to preserve sufficient funds from the fiscal year 1986 allocation to pay Noatak should it prevail. The total amount in question was $611. The court then dismissed the suit, however, on the alternative jurisdictional grounds that Noatak's suit was barred by the Eleventh Amendment, and that the court lacked subject matter jurisdiction. The Commissioner voluntarily agreed to continue holding the $611 pending the appeal of the decision. This court reversed, holding that (1) Noatak was an Indian tribe and the states have no immunity from suits by Indian tribes, and (2) the court had jurisdiction both over the claim that the state had racially discriminated by diluting the bonus given to the Native villages and over the allegation that the Commissioner had violated federal laws and policies intended to further tribal self government. *Native Village of Noatak v. Hoffman*, 896 F.2d 1157, 1165 (9th Cir. 1990) (superseding earlier opinion at 872 F.2d 1384 (9th Cir.1989)).

The Supreme Court reversed. In *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), the Court held that Noatak's suit was barred by the Eleventh Amendment because Alaska's sovereign immunity extended to suits by Indian tribes. The Court remanded to the Ninth Circuit to determine whether any injunctive relief was available despite the Eleventh Amendment bar to the claims for damages. The Ninth Circuit remanded to the district court to determine whether any viable claim under federal law for prospective injunctive relief was justified. The district court found that Noatak's claims for prospective relief were moot due to the repeal of the original revenue-sharing statute. It found that the claims were based on a program that no longer existed and that the mere possibility that the Commissioner might take similar action in the future did not make the current action a viable case or controversy. The district court therefore dismissed the entire action on mootness grounds. The court, however, did not specifically address what would become of the $611 the Commissioner is holding pending the outcome of the dispute.

## DISCUSSION

### I. *MOOTNESS OF THE CLAIM*

■ The first issue we decide is whether the district court erred in dismissing Noatak's claim for prospective relief as moot because the statute which gave rise to the allegedly discriminatory state actions had been repealed. A district court's dismissal of an action on the ground of mootness is reviewed de novo. *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 996 (9th Cir.1993).

■ Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)).

Article III of the United States Constitution confers jurisdiction on federal courts over "cases" and "controversies" and has been construed to prohibit advisory opinions. *See SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, 407, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972); *Muskrat v. United States*, 219 U.S. 346, 362, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911). A federal court has no jurisdiction to hear a case that cannot affect the litigants' rights. *Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir.1989).

■ There are, however, a few exceptions to the mootness doctrine. These include cases where the defendant's conduct constitutes a wrong "capable of repetition yet evading review," or where the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time. *See Barilla v. Ervin*, 886 F.2d 1514, 1519 (9th Cir.1989); *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 854 (9th Cir.1985).

Noatak argues that its action challenging the Commissioner's regulations accompanying § 29.89.050 is not moot because, although the statute was repealed, the state's policy of treating Native villages as racial groups, rather than as political entities, still exists. Noatak fears that the state will implement regulations under the new statute which will likewise reflect the allegedly discriminatory policy. Therefore, Noatak contends that this is a situation capable of repetition yet evading review, and that the state's voluntary cessation of the challenged activity by repealing the prior statute is insufficient to render the case moot.

### A. *Capable of Repetition Yet Evading Review*

■ In order for a matter to fit within the "capable of repetition yet evading review" exception to the mootness doctrine, two criteria must be met. First, there must be a "reasonable expectation" that the same complaining party will be subject to the same injury again. *See Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Barilla*, 886 F.2d at 1519. Second, the injury suffered must be of a type inherently limited in duration such that it is likely always to become moot before federal

court litigation is completed. *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1469 (9th Cir.1992); *see, e.g., Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973) (right to abortion claim capable of repetition but evading review because usual appellate process exceeds nine months); *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968) (ten-day restraining order capable of repetition yet always evading review because litigation never would be completed before ten days expired).

■ Neither of these requirements is met in this case. First, there is no reasonable expectation that the alleged injury will recur. Because the relevant statute has been repealed, the Commissioner cannot promulgate or enforce regulations under that statute. Even if the Commissioner has discretion under the new statute to create new regulations to which Noatak might also object, that in itself is not sufficient to create a reasonable expectation of recurrence. Noatak fears only the *possibility* that the state's allegedly discriminatory policy will manifest itself under the new statute. Federal courts are not authorized to address such theoretical possibilities. If in the future the Commissioner does implement regulations or policies which Noatak finds objectionable, Noatak can challenge them at that time.

Moreover, Noatak has failed to show that this is the type of injury which is of such inherently limited duration that it is likely always to become moot prior to review. It took the Alaska legislature four years to repeal the statute in question, and during all of those four years the Commissioner's regulations remained intact. Noatak had ample time to challenge the enforcement of those regulations while they were in place. Thus, this is not a situation where the duration of the challenged action would be too brief for effective judicial review.

We conclude, therefore, that the "capable of repetition yet evading review" exception to mootness does not apply.

### B. *Voluntary Cessation*

Noatak also argues that its action is not moot because the state's repeal of the statute

was a voluntary cessation of the allegedly illegal activity.

■ Generally, a case should not be considered moot if the defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time. Only if there is no reasonable expectation that the illegal action will recur is such a case deemed moot. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *Lindquist*, 776 F.2d at 854.

■ A statutory change, however, is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. As a general rule, if a challenged law is repealed or expires, the case becomes moot. *See Burke v. Barnes*, 479 U.S. 361, 363, 107 S.Ct. 734, 736, 93 L.Ed.2d 732 (1987) (bill expired during pendency of appeal, rendering moot question of whether president's pocket veto prevented bill from becoming law); *United States Dep't of Treasury v. Galioto*, 477 U.S. 556, 559–60, 106 S.Ct. 2683, 2685–86, 91 L.Ed.2d 459 (1986) (amendment to federal statute rendered case moot); *Kremens v. Bartley*, 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977) (statute providing for commitment of minors repealed, rendering case of named appellants moot); *Bunker Ltd. Partnership v. United States*, 820 F.2d 308, 312 (9th Cir.1987) (new legislation which superseded prior law rendered arguments based on superseded law moot). The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982) (repeal of city ordinance did not render challenge to ordinance moot where city was likely to reenact statute after completion of litigation).

■ Noatak argues that the state's voluntary repeal of the challenged statute and regulations is insufficient to render the case moot because the state has retained its allegedly discriminatory policy and the state may

enforce this policy again under the new statute. As discussed previously, however, Noatak's fear of possible future injury is insufficient to constitute a reasonable expectation that the same alleged injury will recur.

Moreover, in *Lindquist,* 776 F.2d at 854, we held that when the defendant's motivations for ceasing the challenged behavior were not suspect and there was no reasonable expectation that the behavior would recur, the voluntary cessation exception did not apply. Here, the legislature repealed § 29.89.050 *before* Noatak even initiated its lawsuit. Thus, the state's motivations for ceasing the allegedly illegal behavior could not have originated from a desire to terminate Noatak's action. This is not a case where a defendant voluntarily ceases challenged action in response to a lawsuit. Therefore, it is unlikely that the challenged statute and regulations will be reenacted if we affirm the dismissal of Noatak's litigation. As a result, Noatak's claim cannot avoid mootness via the voluntary cessation exception.

Because neither the "capable of repetition yet evading review" exception nor the voluntary cessation exception applies in this case, we conclude that the district court properly dismissed Noatak's action as moot.

## II. *ELEVENTH AMENDMENT BAR*

We next address the issue of whether Noatak's claim for the $611, which the state is holding pending the outcome of this case, is barred by the Eleventh Amendment. These funds represent the amount of money Noatak would have received but for the Commissioner's expansion of the original revenue-sharing program, and it is the maximum amount Noatak could have claimed had it prevailed in this suit.

The district court held that Noatak's claim to recover the $611 was precluded by the Supreme Court's decision in this case which indicated that the Eleventh Amendment barred Noatak's claims for damages. *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). Noatak argues, however, that its claim for the $611 is not a claim for damages,

and therefore it is not barred by the Eleventh Amendment.

■ The Eleventh Amendment effectively immunizes the actions of state governments from review in federal court. It provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. The Amendment bars federal suits against an unconsenting state brought by its own citizens. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). It does not preclude suits, however, for injunctive relief against state officers in their official capacity. *Ex Parte Young,* 209 U.S. 123, 155–56, 167, 28 S.Ct. 441, 452–52, 457, 52 L.Ed. 714 (1908).

Noatak contends that its suit to recover the $611 from the Commissioner in his official capacity is one for injunctive relief and therefore is not barred by the Eleventh Amendment. Specifically, Noatak seeks an order directing the Commissioner to pay over the funds to Noatak. Noatak poses three separate arguments for why the type of relief it seeks is not precluded by the Eleventh Amendment.

### A. *Prospective Relief*

■ First, Noatak argues that its claim for the $611 held by the state is not barred by the Eleventh Amendment because Noatak is seeking prospective injunctive relief, rather than retroactive monetary relief. More specifically, Noatak claims that it is simply seeking an order to compel the Commissioner "to perform his legal duty *in the future,* i.e. to disburse the funds to [Noatak]." *Appellant's Opening Brief* at 30.

■ The Eleventh Amendment does not prohibit a federal court from ordering prospective, as opposed to retroactive, relief. *Edelman,* 415 U.S. at 664–67, 94 S.Ct. at 1356–58. In *Edelman,* the Supreme Court drew a distinction between prospective or

ancillary relief, which refers to relief given in the future pursuant to an injunction, and retroactive relief, which refers to the payment of damages to compensate for past injuries. The Supreme Court held that the Eleventh Amendment did not bar an injunction requiring the state to comply with federal standards for processing welfare applications in the future, even when compliance would cost the state money. The Court, however, refused to allow an injunction ordering the state to pay back all the funds that were previously improperly withheld. Therefore, the plaintiffs' claims for prospective relief were not barred, while the claims for retroactive relief were barred, even though both forms of relief required the state to spend money.

■ In discerning whether the relief sought is prospective or retroactive for purposes of the Eleventh Amendment bar, we must analyze the substance, not the form, of the relief. *Papasan v. Allain,* 478 U.S. 265, 279, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986); *Ulaleo v. Paty,* 902 F.2d 1395, 1399 (9th Cir.1990). Although Noatak has framed its request for payment of the $611 as prospective injunctive relief, in substance, Noatak seeks retroactive monetary relief. In requesting an order requiring the Commissioner to perform his "legal duty" to disburse the funds to Noatak, Noatak essentially seeks an injunction directing the state to pay damages in the amount that Noatak alleges the state previously improperly withheld. This is precisely the type of retroactive relief that the Supreme Court refused to allow in *Edelman.* Thus, Noatak's attempt to characterize its claim as one for prospective relief fails to avoid the bar of the Eleventh Amendment.

### B. *Effect on State Treasury*

■ Noatak's second argument to avoid the Eleventh Amendment bar is that an award of the $611 would not affect the state treasury.

■ The Eleventh Amendment does not prevent suits for monetary relief against state officials in their individual capacities, even when the damages are retroactive compensation for past harms. Suits against state officials that seek payment of money from the state treasury, however, are barred by the Eleventh Amendment, *Kentucky v. Graham,* 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985); *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 604 (9th Cir.1986), because the state effectively is the real party in interest. *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Almond Hill Sch. v. United States Dep't of Agriculture,* 768 F.2d 1030, 1033 (9th Cir.1985).

Noatak concedes that the money technically may now be in the state treasury, but argues that its recovery of the $611 will not affect the treasury because the funds have already been appropriated, and all that remains is a determination of their proper allocation. According to Noatak, if the money is not awarded to Noatak, it will be distributed among the other potential recipients of the revenue-sharing program. Noatak therefore argues that the state treasury will not be affected by any determination of rights to the money in this proceeding.

Under Alaska law, appropriations of funds which are unobligated at the end of the fiscal year are voided, and the money automatically reverts to the treasury. Alaska Const. Art. IX, § 13; Alaska Stat. § 37.25.010 (1993). If there is an "indebtedness arising from a prior year for which the appropriation has lapsed," it is "paid from the current year's appropriations if ... the original obligation date is not more than two years from the requested date of disbursement." Alaska Stat. § 37.25.010(b).

According to these provisions, the money at issue in this case will revert to the state treasury if it does not go to Noatak. If any other potential recipients of the funds are entitled to an unpaid sum, the debt will be paid from the state treasury out of a new appropriation because the appropriation for the year the debt arose has expired and the money has reverted to the treasury. Because two years have passed since the sum of money would have been due the other recipients, any unmade claim to the money would be void. Thus, if the $611 is not awarded to Noatak, it will revert to the state treasury. Accordingly, Noatak's claim that its action

will not affect the state treasury is unfounded.

Noatak offers no authority which specifically states that the Eleventh Amendment does not bar a suit where a state has appropriated treasury funds and is holding them pending the resolution of a dispute about the proper disbursement of those funds. Noatak cites and analogizes impoundment cases, where individuals sought to compel the government to spend money appropriated for a particular purpose. All these cases simply involved the question of whether a state official may be sued in state court, or a federal official in federal court, for release of impounded funds. They do not authorize a suit against a state official in federal court. Therefore, they are inapposite here as far as the Eleventh Amendment is concerned.

As final authority for its argument that the Eleventh Amendment does not bar its claim for the appropriated funds, Noatak cites *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). In that case, a plurality of the Supreme Court held that the Eleventh Amendment did not bar a suit by a salvage company for the execution of a warrant which would transfer possession of specific artifacts, held by state officials, to the salvage company. *Id.* at 699, 102 S.Ct. at 3322. The case, however, does not help us in resolving Noatak's claim. In *Treasure Salvors,* the warrant sought possession of specific property, did not seek attachment of state funds, and imposed no burden on the state treasury. In fact, the state officials in that case had no title over, or colorable claim to possession of, the property in question. Noatak's claim for the $611 involves a recovery of state money and would affect the state treasury. Therefore, Noatak's claim for the payment of the funds in this case is barred by the Eleventh Amendment.

## C. *Specific Relief*

■ Noatak also argues that an order requiring the state to pay the disputed money to Noatak constitutes specific relief and therefore the Eleventh Amendment does not bar its suit for the recovery of those funds.

■ The Eleventh Amendment does not bar suits for specific injunctive relief. In *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court upheld an order requiring the United States Department of Health and Human Services to pay the state of Massachusetts the amount of money the state was entitled to receive under a Medicaid reimbursement plan. The Court held that while the government's sovereign immunity protected it from suits for money damages, the funds sought in this case actually amounted to specific relief because the state received the very thing to which it was entitled, not a substitute meant to compensate for a loss. *Id.* at 894–95, 108 S.Ct. at 2732–33. Noatak relies on this decision in arguing that its claim for the $611 is not barred by the Eleventh Amendment.

*Bowen,* however, did not implicate Eleventh Amendment concerns. Instead, *Bowen* dealt with the meaning of "money damages" as that term is used in § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (1988). The Court's decision relied on principles of statutory interpretation and Congress's legislative intent in enacting the amendment to that section. Although the Court's discussion of the differences between monetary and specific relief was quite lengthy, it was within the context of the APA and should not be treated as a widely applicable, general rule for determination of the nature of the relief sought. *See, e.g., North Star Alaska v. United States,* 14 F.3d 36, 38 (9th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994); *Transohio Sav. Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 613 (D.C.Cir. 1992) (in both cases, refusing to take an expansive view of *Bowen* which would waive sovereign immunity for contract claims seeking specific relief under the APA).

We therefore conclude that the Eleventh Amendment bars Noatak's claim to the disputed funds.

## III. *DECLARATORY RELIEF*

■ Noatak finally contends that even if the Eleventh Amendment precludes this court from ordering payment of the $611 from the state, Noatak nonetheless is entitled to a declaratory judgment of its right to those funds. The Eleventh Amendment does

not bar actions for declaratory relief brought against state officials. *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n. 2 (9th Cir.1991).

■ The Declaratory Judgment Act, 28 U.S.C. § 2201 (1993), "permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and ... declaratory relief may be available even though an injunction is not." *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985). The district court, however, may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions. *See Williams v. Alioto*, 549 F.2d 136, 141 n. 4 (9th Cir.1977); *Solenoid Devices, Inc. v. Ledex, Inc.*, 375 F.2d 444, 445 (9th Cir.1967).

■ Because we have already determined that Noatak's claim is moot, the issuance of a declaratory judgment would be improper. Noatak maintains that there is a continuing violation in this case, first because the state's allegedly unconstitutional policy still exists, and second because the Commissioner continues to withhold, on allegedly unconstitutional grounds, the $611 which rightfully belongs to Noatak.

Noatak's first contention is not persuasive, given that the statute and regulations at issue in this case have been repealed. The possibility that an allegedly unconstitutional adverse policy will reappear in another form in the future does not constitute an ongoing violation of federal law. Noatak's second contention is equally unconvincing. The Commissioner, by agreement, is simply holding the money pending resolution of the litigation. This is not a continuing violation of federal law. Therefore, declaratory relief in this case would not serve any proper purpose.

### CONCLUSION

In light of the foregoing, we hold that the district court properly dismissed the action. The repeal of the statute and regulations at issue rendered moot Noatak's principal claim, and the Eleventh Amendment bars its claim for monetary relief. Declaratory relief is unavailable where Noatak's claim is otherwise moot or barred by the Eleventh Amendment. We therefore affirm the judgment of the district court.

AFFIRMED.