**NOME ESKIMO COMMUNITY; Native Village of Solomon; King Island Native Community, Plaintiffs–Appellants,**

v.

**Bruce BABBITT, Secretary of the Interior, and the United States Department of the Interior, Defendants–Appellees.**

No. 94–35668.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Oct. 2, 1995.

Joseph D. Johnson, Alaska Legal Services Corporation, Anchorage, Alaska, and Lawrence A. Aschenbrenner, Native American Rights Fund, Anchorage, Alaska, for plaintiffs-appellants.

David C. Shilton, Assistant Attorney General, United States Department of Justice, Washington, DC, for defendants-appellees.

Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The district court properly dismissed this case because it was and is moot.

### I. FACTS

This case arises from an attempt by the Department of Interior to facilitate gold dredging on the floor of Norton Sound, the protrusion from the Bering Sea near Nome, Alaska. The seabed is called the "outer continental shelf." The outer continental shelf is certain land on the bed of the sea more than three miles seaward from the coastline. 43 U.S.C. § 1331(a). "The area of the shelf off Alaska is estimated to contain 600,000 square miles, an area almost as large as Alaska itself." 1953 U.S.C.C.A.N. 1385, 1390. The plaintiffs seek to control the money which may come from mineral extraction in this vast area.

On June 18, 1991, the Minerals Management Service of the Department of the Interior issued a notice that it was accepting bids for the right to lease areas of Norton Sound for gold dredging. Plaintiffs immediately sued for an injunction prohibiting leases and a declaratory judgment establishing their rights to the minerals at the proposed lease site. The complaint alleged interference with aboriginal rights if the lease was granted. The complaint does not claim money damages or any other relief for trespass or other harms already caused.

The day after the complaint was filed, the government notified the court that "the Minerals Management Service received no bids for the [outer continental shelf] Mining Pro-

gram, Norton Sound Lease Sale, and that consequently no sale will be held." No sale has been announced since, for the near or distant future. The closest plaintiffs come to claiming any possibility of future mineral development is the statement in their brief that the Secretary of the Interior "has refused to rule out additional lease sales after 1997." At argument, government counsel represented that the government did not presently intend to attempt further mineral development until at least 2002.

The district court denied the request for a preliminary injunction as moot, and subsequently dismissed the case as moot.

## II. ANALYSIS

■ Mootness is reviewed *de novo. Gemtel Corp. v. Community Redevelopment Agency of Los Angeles*, 23 F.3d 1542, 1545 (9th Cir.1994).

■ Mootness, like the related doctrine of standing, restricts judicial power to the decision of cases and controversies, so that our elected government retains the general power to establish social policy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). We have called mootness "the doctrine of standing set in a time frame." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir.1994). As with standing, "[t]he federal courts lack power to make a decision unless the plaintiff has suffered an injury in fact, traceable to the challenged action, and likely to be redressed by a favorable decision." *Snake River Farmers' Ass'n v. Department of Labor*, 9 F.3d 792, 795 (9th Cir.1993). If one of these required prerequisites to the exercise of judicial power disappears while the litigation is pending, then in the absence of an applicable doctrinal exception, the judicial branch loses its power to render a decision on the merits of the claim.

■ In this case, the relief sought was a declaration that plaintiffs owned rights to the sea floor, an injunction prohibiting lease sales without plaintiffs' consent, and an accounting for any money the Secretary obtained from leases. The day after plaintiffs sued, the court was notified that the lease sale had

been cancelled for lack of bids, and that there was no immediate prospect of another, similar lease sale. That was the end of the "case," constitutionally and practically.

■ Plaintiffs argue that the Secretary has failed to recognize their aboriginal rights to the sea floor, and has permitted fishing in the portion of the sea outside the territorial limits of the United States but within the area in which they claim aboriginal rights. But they seek no relief in this case relating to fishing. In the absence of some "case or controversy" arising out of the Secretary's actions for which plaintiffs request some relief, we lack jurisdiction to decide whether plaintiffs have any aboriginal rights to the seabed.

■ Plaintiffs also say that "trespasses to their aboriginal lands have already occurred," referring to the bed of the sea, because of exploratory wells drilled by oil companies at some past time pursuant to Department of the Interior permission. But they do not sue for those trespasses. Even if, for the sake of argument, we assume that they are correct that trespasses have occurred, this lawsuit, which claims no damages, would not enable the court to grant redress for the trespasses. Mootness, like standing, limits judicial power to cases where the wrong can be redressed by the lawsuit.

■ Plaintiffs also argue that, in *Village of Gambell v. Babbitt*, 999 F.2d 403 (9th Cir. 1993), the Secretary's brief suggested that if the court subordinated federal paramountcy to aboriginal title, then the case would not be moot. The Secretary's statement in that earlier proceeding is irrelevant. Aside from the several obvious distinctions to be drawn between the cases, a party's argument, or even a stipulation, does not suffice to establish the existence of judicial power. A federal court has a duty to consider jurisdiction sua sponte. *In re Ferrante*, 51 F.3d 1473, 1476 (9th Cir.1995).

Plaintiffs do not seek to quiet title to any claim they may have in the sea floor. They expressly abjure any claim under the Quiet Title Act. 28 U.S.C. § 2409a. No doubt they have framed their claim other than as a suit to quiet title because of the statement in

*Village of Gambell v. Hodel,* 869 F.2d 1273, 1276 (9th Cir.1989), "the national government has 'paramount' interests in ocean waters and submerged lands below the low water mark.... Any claims of right that are inconsistent with national paramountcy ... cannot be recognized." *Id.*

Neither do plaintiffs argue that any established exceptions to the mootness doctrine apply, such as a controversy capable of repetition yet evading review. *Cf. Headwaters, Inc. v. Bureau of Land Management,* 893 F.2d 1012, 1016 (9th Cir.1990). Nor do they argue that their lawsuit caused a voluntary cessation of the activity to which they objected. *Cf. Native Village of Noatak,* 38 F.3d at 1511. They filed their lawsuit a month after bidding was opened, on the last day on which bids were due. No bids had been received. The leasing attempt failed independently of the lawsuit.

Mootness in this case is analogous to mootness in *Village of Gambell v. Babbitt,* 999 F.2d 403 (9th Cir.1993). In that case, native villages challenged the federal government's decision to lease certain portions of the outer continental shelf for oil exploration. By the time the case reached this court, however, the leases had been abandoned following the oil companies' unsuccessful exploratory efforts. We noted that the Minerals Management Service had indicated that it "will not consider a sale in Norton Basin," until after 1997. *Id.* at 407. In the absence of any present or concrete future plan to lease portions of Norton Sound, we found the plaintiffs' claims to be moot. As the *Gambell* court decided, "it is impossible to determine the infringement issue without first knowing the scope and nature of the proposed leasing activity." *Id.* at 408.

■ If there is no "case" in the Constitutional sense of the word, then a federal court lacks the power to issue a declaratory judgment. *Native Village of Noatak* at 1514. Plaintiffs have suggested that, even absent a continuing case or controversy, we should provide a declaration of their rights in the Norton Sound area. However, "[a] declaratory judgment may not be used to secure judicial determination of moot questions." *Id.*

■ Plaintiffs have requested an award of fees under the Equal Access to Justice Act. They cannot obtain them because they have lost the case. Such fees can be awarded only to a prevailing party. 28 U.S.C. § 2412(b).

■ The district court ruled on alternative grounds. The judge correctly decided that the case was moot, and, probably to avoid needless relitigation if we reversed the mootness determination, also held that aboriginal title was subordinate to federal paramount title. We must vacate that substantive determination, without intimating any view on whether it was correct, because mootness precluded the exercise of judicial power. *Native Village of Noatak,* 38 F.3d at 1509. It might be desirable, from a practical standpoint, to have some authoritative resolution of the aboriginal claims to rights in the outer continental shelf. The likely expense of responding to litigation may thwart socially worthwhile activity which the government properly seeks to facilitate. But without a "case," a federal court lacks jurisdiction to perform that task.

AFFIRMED in part, and VACATED in part.