**AMERICA WEST AIRLINES, INC., Plaintiff–Appellant,**

v.

**NATIONAL MEDIATION BOARD; International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, AFL–CIO, Defendants–Appellees.**

No. 96–17056.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1997.

Decided July 11, 1997.

Robert A. Siegel, O'Melveny & Myers, Los
Angeles, CA, for plaintiff–appellant.

Marc Richman, United States Department of Justice, Washington, DC, David P. Dean, James & Hoffman, Washington, DC, for defendants–appellees.

Before: ALARCON, BEEZER and O'SCANNLAIN, Circuit Judges.

BEEZER, Circuit Judge.

This case arises out of the National Mediation Board's ("NMB" or "Board") decision to certify the International Brotherhood of Teamsters as the bargaining representative for America West Airlines' employee mechanics following a representation election. America West contends that the NMB exceeded its authority under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et seq.*, by allowing 378 discharged employees to vote in the election. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1), and we affirm in part and dismiss in part.

I

As a result of America West's decision to subcontract out its heavy maintenance, the Airline discharged 378 mechanics and related employees. Three hundred seventy-five of the discharged employees signed individual release agreements which waived their right to reinstatement in exchange for cash compensation.

The Teamsters and five of the discharged employees, including four who had signed release agreements, filed a purported class action against the Airline seeking reinstatement of the terminated employees.

The Teamsters also filed an application with the NMB to represent the mechanics. The NMB found that a representation dispute existed and ordered a representation election. Over America West's objection, an NMB mediator found that all 378 of the terminated employees were eligible to vote in the election because they had a pending claim, the purported class action, for reinstatement.

The NMB proceeded to mail ballots to both current and dismissed employees. The dismissed employees received "Challenged Ballots," pursuant to the NMB's standard practice for those individuals whose voter eligibility is at issue. Votes cast by such ballot were to be counted only after the Board made a final decision regarding voter eligibility.

After the ballots were returned, the NMB issued its final determination that the dismissed employees were eligible to vote. Of the total 722 votes cast, 587(81%) were for the Teamsters. Out of the 345 current employees who voted, 272(79%) voted for the Teamsters. Out of the 377 dismissed employees, 317(84%) voted for the Teamsters. Based on the results of the election, the NMB certified the Teamsters as the collective bargaining representative for America West's mechanics and related employees.

America West then filed this action. The Airline sought to enjoin the NMB and the Teamsters from enforcing the certification of the Teamsters as the mechanics' bargaining representative and to have the court declare the certification null and void. The district court granted the NMB's motion to dismiss the claims against the NMB for lack of jurisdiction. The court also granted the Teamsters' motion for a preliminary injunction to compel America West to meet with the Teamsters and denied America West's motion for preliminary injunction to prevent the NMB and the Teamsters from enforcing the certification or to commence bargaining prior to final resolution of this action. The district court certified its order dismissing the NMB under F.R.C.P. 54(b), and this timely appeal followed.

II

■ America West first argues that the district court erroneously concluded that it lacked subject matter jurisdiction to hear the claims against the NMB. The existence of subject matter jurisdiction is a question of law reviewed de novo. *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997).

## A.

The RLA provides that when there is a dispute as to the identity of the employee's representative, the NMB should investigate and certify the identity of that representative. 45 U.S.C. § 152, Ninth. In *Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non–Contract Employees, ("Railway Clerks")*, the Supreme Court declared that § 152, Ninth of the RLA gives the NMB, and not the judiciary, the "power to resolve controversies" concerning representation:

> where Congress 'has not expressly authorized judicial review ... this Court has often refused to furnish one even where questions of law might be involved.... [T]he intent seems plain-the [representation] dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals of law.'

380 U.S. 650, 659, 85 S.Ct. 1192, 1197, 14 L.Ed.2d 133 (1965) (quoting *Switchmen's Union v. National Mediation Board,* 320 U.S. 297, 301–305, 64 S.Ct. 95, 97–99, 88 L.Ed. 61 (1943)). The court explained that arguments "in terms of policy and broad generalities as to what the [RLA] should provide ... are matters for Congress and the Board rather than the courts." *Railway Clerks,* 380 U.S. at 671, 85 S.Ct. at 1203. The Court restricted judicial review of NMB decisions to questions concerning whether the Board "performed its statutory duty to 'investigate' the dispute." *Id.* at 661, 85 S.Ct. at 1198.

■ As we have noted before, *Railway Clerks* makes clear that judicial review of NMB decisions is to be extraordinarily limited: "so long as the Board is acting with the purpose of find[ing] the fact as to who is the employees' representative, the courts are deprived of jurisdiction to review Board decisions." *America West Airlines, Inc. v. National Mediation Bd.,* 986 F.2d 1252, 1256 (9th Cir.1992) ("*America West I* ") (internal quotation omitted) (alteration in original). The general rule is that judicial review of a NMB representation decision is available only upon a showing, on the face of the pleadings, that the NMB either violated the Constitution or committed a gross violation of the RLA. *See Hunter v. National Mediation Bd.,* 754 F.2d 1496, 1498 (9th Cir.1985) (per curium) (refusing to review a NMB investigatory procedure because plaintiff failed to show that NMB action was unconstitutional, an egregious violation of the RLA or made in excess of delegated powers); *see also Kiamichi R.R. v. National Mediation Bd.,* 986 F.2d 1341, 1344 (10th Cir.1993) (complaining party must show, on the face of the pleadings, that the NMB violated the constitutional rights of the employer, employee, or union, or grossly violated the RLA); *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1249–50 (2d Cir.1992) (scope of judicial review is limited to "instances of constitutional dimension or gross violation of the statute"); *Professional Cabin Crew Ass'n v. National Mediation Bd.,* 872 F.2d 456, 459 (D.C.Cir.1989) ("*PCCA* ") (same).

■ Further, other circuit courts have held that a court may only "peek at the merits" in order to determine if the NMB committed a constitutional violation or egregious violation of the RLA; if no error of this magnitude is disclosed, the case should be dismissed. *Brotherhood of Maintenance of Way Employees v. Grand Truck Western R.R.,* 961 F.2d 1245, 1249 (6th Cir.1992); *PCCA,* 872 F.2d at 459. We adopt this limitation because it furthers the purpose of the RLA. The Supreme Court has stated that Congress committed representation disputes to the NMB's discretion because speedy resolution is the Act's "objective of the first order." *Railway Clerks,* 380 U.S. at 668, 85 S.Ct. at 1201. Permitting a full review of the merits in order to determine jurisdiction would defeat Congress' intent "to avoid the haggling and delays of litigation." *Railway Clerks,* 380 U.S. at 671, 85 S.Ct. at 1203. Allowing a "peek" at the merits enables a court to determine if the NMB has committed a gross violation of the RLA without causing undue delay.

## B.

We now decide whether the district court properly concluded, based on a "peek" at the

merits, that the NMB did not grossly violate the RLA by permitting the discharged employees to vote. This is an issue of first impression in this Circuit.

America West's argument that the NMB egregiously violated the RLA is best understood as presenting separate challenges to the NMB's pre-election decision to allow the casting of provisional ballots by the discharged employees and to its post-balloting decision to count the votes of the discharged workers. We address each challenge in turn.

### 1. Pre–Election Decision

America West asserts that the NMB mediator's decision permitting discharged employees to cast provisional ballots was in gross violation of the RLA. The Airline asserts that it sustained an injury from this improper voter eligibility determination even though a majority of the then-current employees elected the Teamsters as their bargaining representative. The mediator's decision, the argument continues, improperly influenced the current employees' votes by validating the Teamsters' campaign rhetoric that America West violated the RLA by discharging the mechanics.

America West urges this court to declare that the NMB committed a per se violation of the RLA by permitting the discharged employees to cast provisional votes. The Airline argues that the language of the RLA compels the conclusion that only current employees may vote in representational elections. America West cites, for example, § 152, Ninth of the RLA which states that the NMB is "authorized to take a secret ballot of *employees* ... [to] ensure the choice of representatives [is] by the *employees* ...." 45 U.S.C. § 152, Ninth (emphasis added). The Act defines "employee" as "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee...." 45 U.S.C. § 151, Fifth. Because discharged workers do not fall within the definition of "employee," America West argues, they are not entitled to vote.

However, the RLA also grants the NMB the power to determine "who may participate in the election." 45 U.S.C. § 152, Ninth. Accordingly, the NMB has established a regulation which declares that dismissed employees, with pending claims for reinstatement on the basis of wrongful termination, are eligible to participate in representation elections. 29 C.F.R. 1206.6. Other circuit courts have condoned this expansion of the definition of "employee". *PCCA*, 872 F.2d at 460–61 (former strikers with pending claims of reinstatement eligible to vote); *Virgin Atlantic Airways*, 956 F.2d at 1250 (former employees with pending claims of reinstatement eligible to vote).

These decisions emphasize that: (1) it is within the sole jurisdiction of the NMB to decide who is eligible to vote; (2) the language of the statutory definition of "employee" is nonexclusive; and (3) the purpose of the RLA in ensuring that employee choice of a representative is independent from employer interference is furthered by allowing discharged employees with pending claims for reinstatement to vote. Based on these rationales, we hold that the NMB's decision to permit the discharged employees' to cast provisional ballots was not a per se gross violation of the RLA.

America West argues that, even if provisional voting by discharged employees does not qualify as a per se gross violation of the RLA, the NMB in this instance failed to properly investigate the representation dispute. Particularly, the Airline contends that the NMB failed to investigate whether the dismissed employees had pending claims of reinstatement based on a purported illegal discharge. America West asserts that 373 of the 378 discharged employees did not have pending claims for reinstatement because the district court never certified the employees as a class in the reinstatement action brought by the Teamsters and five of the discharged employees.

At the time the NMB mediator permitted the casting of provisional ballots by the discharged workers, however, the reinstatement action was still pending and the district court had not ruled on class certification. The NMB exceeds its statutory authority when it "step[s] out of the in-

vestigator's inverness into the robe of the adjudicator ... —regardless of whether its action also happens to be employed as an investigatory tool." *America West I*, 986 F.2d at 1258. Class certification is the province of the courts; the NMB would have departed from its investigatory role had it ruled that the discharged employees did not have pending claims for reinstatement because they could not be properly certified as a class. The NMB acted properly by refusing to rule on whether the discharged employees could be certified as a class.

In the alternative, the Airline contends that even if the NMB correctly concluded that the dismissed employees had pending claims for reinstatement, the NMB should not have permitted employees who signed release agreements to vote. The validity of the release agreements, however, was a central issue in the reinstatement action. Again, it would have been inappropriate for the NMB to act as an adjudicator and reach the underlying merits of the reinstatement claim. *Id.*

A "peek" at the merits does not indicate that the NMB failed to investigate whether the discharged employees had pending claims of reinstatement. The district court properly dismissed for lack of jurisdiction the claims against the NMB regarding the discharged employees' provisional balloting.

### 2. Post–Balloting Decision

America West also contends that the NMB's final determination to count the ballots of the discharged workers was a gross violation of the RLA. We dismiss this claim as moot.

■ If the NMB had not counted the votes of the discharged employees, the Teamsters still would have been elected by an overwhelming majority of the then-current employees. Federal courts possess the power to render a decision when a plaintiff has suffered an injury-in-fact which is traceable to the challenged action and likely to be redressed by a favorable decision. *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 815 (9th Cir.1995). If one of these prerequi-

sites is lacking, the court lacks jurisdiction and should dismiss the appeal as moot. *Id.* America West's asserted injury, the certification of the Teamsters as the bargaining representative of the mechanics, is not traceable to the NMB's decision to count the votes of the discharged employees.

### III

■ America West also appeals the district court's preliminary injunction compelling the Airline to "meet with" the Teamsters as is contemplated by the RLA. A district court's grant or denial of a preliminary injunction will be reversed only when the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996).

■ A party requesting a preliminary injunction must show either: "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping [sharply] in [its] favor." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir.1993) (internal quotation omitted). These two formulations represent a continuum in which "the required degree of irreparable harm increases as the probability of success decreases." *Id.* (internal quotations omitted).

■ The district court properly found that the Teamsters had a likelihood of success on the merits because, as discussed in section IIB above, the certification of the Teamsters as bargaining representative was not in gross violation of the Act. The court also correctly found that the employees whom the Teamsters represent would suffer irreparable harm to their rights under the Act by America West's failure to comply with Section 2, Ninth of the Act. This section states that upon the NMB's certification, the carrier is required to "meet with" the certified representative. 45 U.S.C. § 152, Ninth. The district court did not abuse its discretion in granting the preliminary injunction.

## IV

Finally, America West contends that the district court improperly denied the Airline's motion for a preliminary injunction. The Airline sought to enjoin the NMB and the Teamsters from attempting to enforce the NMB's certification prior to final resolution of this action.

America West argued to the district court that an injunction was proper because the Teamsters improperly interfered with the election by filing a meritless lawsuit for the purpose of enabling discharged employees to vote in the representation election. Regarding this claim, the district court noted that "America West fails to argue any likelihood of success on the merits or show the existence of serious question going to the merits of this issue." The court found that America West did not meet its burden and thus denied the motion. The district court did not abuse its discretion.

AFFIRMED in part, DISMISSED in part.