*Farrakhan v. Gregoire*, No. 06-35669

THOMAS, Circuit Judge, with whom SCHROEDER, MCKEOWN, and WARDLAW, Circuit Judges, join, concurring:

I agree that the judgment of the district court should be affirmed, but on different grounds. I would hold that the claims for prospective injunctive relief are moot, and that the district court should be affirmed on the remainder of the claims for the reasons provided by the district court. On this record, we need go no further.

I

"As a general rule, if a challenged law is repealed or expires, the case becomes moot." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994); *see also Bunker Ltd. Partnership v. United States*, 820 F.2d 308, 312 (9th Cir. 1987) (holding that new legislation superseding prior law rendered challenge to prior statute moot).

In this case, after the district court issued its decision on remand, Washington repealed its felon disenfranchisement statute and enacted a new provision. Among other changes, Washington law now provides that the voting rights of felons will be "provisionally restored," at such time as those convicted under Washington state law are no longer under the authority of the Washington Department of Corrections. An Act Relating to the Restoration of the Right to Vote

for People Who Were Convicted of Felonies, ch. 325, 2009 Wash. Sess. Laws 1649 (codified at Wash. Rev. Code §§ 9.92.066, 9.94A.637, 9.94A.885, 9.96.050, 10.64.140, 29A.08.520).

The plaintiffs posit that the new law actually increases disenfranchisement; the State disputes this contention. Regardless, the legal landscape has materially changed. Plaintiffs sought to enjoin operation of the prior statute. That prospective relief is no longer available. Plaintiffs now request that we enjoin operation of the new statute. However, the district court has not had the opportunity to address that issue in the first instance, and the empirical analysis that formed the basis of the claim has changed. Therefore, I would either dismiss the portion of the appeal that relates to prospective injunctive relief as moot or, as Judge McKeown suggested in her dissent to the panel opinion, remand the case to the district court for re-examination in light of the new legislation. *Farrakhan v. Gregoire*, 590 F.3d 989, 1016-18 (9th Cir. 2010) (McKeown, J., dissenting).

II

As to the claims that are not moot,[1] I would affirm the judgment of the

---

[1]Plaintiffs' challenge to Wash. Const. art. VI, § 3, and plaintiffs' damage claims were not rendered moot by passage of the new statute. Additionally, plaintiffs' claims for declaratory relief are arguably not moot to the extent that the provisions of the new and the old statutes are coextensive and the plaintiffs are subject to the same harm. *Jacobus v. State of Alaska*, 338 F.3d 1095, 1102-05 (9th Cir. 2003).

district court as entered on remand. *Farrakhan v. Gregoire*, No. CV-96-076-RHW, 2006 WL 1889273 (E.D. Wash. July 7, 2006). The district court thoroughly considered and weighed the traditional § 2(b) factors, often referred to as "the Senate Factors." S. Rep. No. 97-417, at 28-29 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177; *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). The district court properly concluded that, considering the totality of the circumstances, Washington's felon disenfranchisement law does not violate the Voting Rights Act. Therefore, I agree that the judgment should be affirmed.

As I understand the majority opinion, it does not disturb the holding in *Farrakhan v. Washington*, 338 F.3d 1009, 1019 (9th Cir. 2003) that a § 2 analysis requires consideration of factors external to the challenged voting mechanism itself. Nor does the majority opinion categorically prohibit a § 2 challenge to a felon disenfranchisement statute. With that understanding, I concur in the majority opinion.

Congress enacted the Voting Rights Act of 1965 for the broad remedial purpose of eliminating racial discrimination in voting. *South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966). In enacting § 2, Congress noted that it was impossible to predict the variety of means that would be used to infringe on the right to vote and that the voting rights landscape was marked by innovation and

discrimination.[2]  Congress's express objective in amending § 2 was to "broaden the protection afforded by the Voting Rights Act." *Chisom v. Roemer*, 501 U.S. 380, 404 (1991).  Thus, examination of factors external to the challenged voting mechanism is a required part of a § 2 analysis.

Section 2 provides, without limitation, that any voting qualification that denies citizens the right to vote in a discriminatory manner violates the Voting Rights Act.  42 U.S.C. § 1973; *see also Allen v. State Bd. of Elections*, 393 US. 544, 566-67 (1969) (noting that Congress intentionally chose the expansive language "voting qualifications or prerequisite to voting, or standard, practice, or procedure" for § 2 so as to be "all-inclusive of any kind of practice" that might be used by states to deny citizens the right to vote (internal quotation marks omitted)).  There is no categorical exclusion for felon disenfranchisement laws in the text of the statute.  If Congress had intended categorically to exclude certain laws from the reach of § 2, it could have easily done so explicitly.  It may still do so, if it chooses.

That being said, in my view, establishing that a particular felon

---

[2]S. Rep. No. 89-162, at 5 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2508, 2562 (joint views of Senators Dodd, Hart, Long, Kennedy, Bayh, Burdick, Tydings, Dirksen, Hruska, Fong, Scott, and Javits); H.R. Rep. No. 89-439, at 10 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2437, 2441 (describing how "even after apparent defeat resisters s[ought] new ways and means of discriminating," and, as a result, rejecting the case by case approach that "too often ha[d] caused no change in result, only in methods.")

disenfrancement law violates § 2 because it discriminates on the basis of race will be very difficult. As we know, felon disenfranchisement provisions are presumptively constitutional. *Richardson v. Ramirez*, 418 U.S. 24, 54-55 (1974). A state's criminal justice system is a complex organization, with many factors contributing to the ultimate incarceration of a particular person. Of course, individual decisions can, in the aggregate, result in a prison population that is racially disproportionate. That is the thrust of the plaintiffs' argument in this case: that a multitude of small discriminatory decisions (whether intentional or not) have led to incarceration of minorities in percentages that cannot be explained by non-racial factors. However, that result alone does not, in my judgment, compel the conclusion that the felon disenfranchisement law violates § 2. If it did, then enforceability of felon disenfranchisement laws simply would depend on whether prison populations mirrored general population demographics. Using that logic, if the prison population deviated from the norm in a statistically significant way, then felon disenfranchisement would be enjoined; if the prison population returned to normal distributions, the injunction would be lifted. That is not the foundation of a § 2 violation. Indeed, Congress rejected this reasoning when it provided elsewhere in the statute that "nothing in this section establishes a right to have members of a protected class elected *in numbers equal to their proportion in the population*." 42

U.S.C. § 1973(b) (emphasis added). We have also noted that "a bare statistical showing of disproportionate *impact* on a racial minority does not satisfy the § 2 'results' inquiry." *Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 595 (9th Cir. 1997) (emphasis in original). Thus, in my view, the district court properly analyzed the data presented by the plaintiffs in the context of the totality of the circumstances and in consideration of the Senate Factors.

On the other hand, one can conceive of circumstances in which felon disenfranchisement laws could operate to violate § 2, whether by the structure or intent of the law itself, or by other means. Indeed, the Supreme Court has made it clear that states cannot use felon disenfranchisement as a tool to discriminate on the basis of race, even if the laws are facially race-neutral. *Hunter v. Underwood*, 471 U.S. 222, 233 (1985). Thus, in my view, a categorical exclusion of felon disenfranchisement laws from the reach of § 2 is inappropriate, either as a matter of judicial construct or statutory interpretation.

### III

I respectfully part company with the majority to the extent that it suggests that proof of discriminatory intent is required to establish a § 2 violation. Congress amended § 2 in 1982 "to make clear that proof of discriminatory intent is not required to establish a violation of Section 2." S. Rep. No. 97-417, at 2 (1982),

*reprinted in* 1982 U.S.C.C.A.N. 177, 179; *see also Ruiz v. City of Santa Maria*, 160 F.3d 543, 557 (9th Cir. 1998) (noting Congress's statement that the "intent test" was "unnecessarily divisive [in that] it involve[d] charges of racism on the part of individual officials or entire communities," it "placed an inordinately difficult burden of proof on plaintiffs," and it "asked the wrong question" (internal quotation marks omitted, alterations in the original)). This is a question we need not decide on this record or in this case.

With these observations, I concur.