# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MUHAMMAD SHABAZZ FARRAKHAN,
aka Ernest S. Walker; AL-KAREEM
SHADEED; MARCUS X. PRICE;
RAMON BARRIENTES; TIMOTHY
SCHAAF; CLIFTON BRICENO,
          *Plaintiffs-Appellants,*

          v.

CHRISTINE O. GREGOIRE; SAM REED;
HAROLD W. CLARKE; STATE OF
WASHINGTON,
          *Defendants-Appellees.*

No. 06-35669

D.C. No.
CV-96-00076-RHW

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, Senior District Judge, Presiding

Argued and Submitted
September 21, 2010—San Francisco, California

Filed October 7, 2010

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Diarmuid F. O'Scannlain, Pamela Ann Rymer,
Andrew J. Kleinfeld, Sidney R. Thomas, Susan P. Graber,
M. Margaret McKeown, Kim McLane Wardlaw,
Ronald M. Gould and Richard R. Clifton, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Thomas;
Concurrence by Judge Graber

17067

## COUNSEL

Ryan P. Haygood (argued), John Payton, Theodore Shaw, Norman J. Chachkin, Debo P. Adegbile, Kristen Clarke and Dale E. Ho, NAACP Legal Defense & Educational Fund, Inc., New York, New York, Danielle C. Gray, New York,

New York, and Lawrence A. Weiser, University Legal Assistance at Gonzaga Law School, Spokane, Washington, for the plaintiffs-appellants.

Robert M. McKenna (argued), Attorney General, Daniel J. Judge, Senior Counsel, and Jeffrey T. Even, Carol Murphy and William B. Collins, Deputy Solicitors General, Olympia, Washington, for the defendants-appellees.

Derek S. Tarson and Marianne Koh, Of Counsel, Debevoise & Plimpton LLP, New York, New York, for amici curiae Twenty-Three Leading Criminologists.

Sharon L. Browne and Ralph W. Kasarda, Pacific Legal Foundation, Sacramento, California, for amici curiae Pacific Legal Foundation and Center for Equal Opportunity.

Thomas C. Goldstein, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C., and Pamela S. Karlan and Jeffrey L. Fisher, Stanford Law School Supreme Court Litigation Clinic, Stanford, California, for amici curiae Thirteen Law Professors.

Daniel F. Kolb and Edmund Polubinski III, Davis Polk & Wardwell LLP, New York, New York, for amicus curiae Brennan Center for Justice at New York University School of Law.

Juan Cartagena, Community Service Society, New York, New York, for amicus curiae Community Service Society.

Elizabeth B. Wydra, Douglas T. Kendall and David H. Gans, Constitutional Accountability Center, Washington, D.C., for amicus curiae Constitutional Accountability Center.

Whitty Somvichian, Kyle C. Wong, Kelly Cooke and Tyler Onitsuka, Cooley LLP, San Francisco, California, for amici curiae Lawyers' Committee for Civil Rights, Equal Justice

Society, Legal Services for Prisoners with Children and American Parole and Probation Association.

Sarah A. Dunne and Nancy Talner, American Civil Liberties Union of Washington Foundation, Seattle, Washington, Peter A. Danelo, Seattle, Washington, Leonard J. Feldman, P.K. Runkles-Pearson and Daniel A. Swedlow, Stoel Rives LLP, Seattle, Washington, and Laughlin McDonald and Nancy G. Abudu, ACLU Voting Rights Project, Atlanta, Georgia, for amici curiae American Civil Liberties Union of Washington and American Civil Liberties Union.

Lawrence S. Lustberg and Jennifer B. Condon, Gibbons P.C., Newark, New Jersey, for amici curiae National Black Police Association, National Latino Officers Association, American Probation and Parole Association and Six Former Law Enforcement Officials.

---

**OPINION**

PER CURIAM:

Washington's constitution denies the right to vote to "[a]ll persons convicted of infamous crime unless restored to their civil rights." Wash. Const. art. VI, § 3. An "infamous crime" is one that's "punishable by death . . . or imprisonment in a state correctional facility." Wash. Rev. Code § 29A.04.079. Washington has disenfranchised felons since 1866, four years before the Fifteenth Amendment was ratified. Territorial Law of 1866, Rem. & Bal. Code § 4755.

Plaintiffs claim that the state's felon disenfranchisement law violates section 2 of the Voting Rights Act ("VRA") because the law "results in a denial or abridgement of the right . . . to vote on account of race." 42 U.S.C. § 1973(a). Plaintiffs don't claim that the law was enacted for the purpose

of denying minorities the right to vote. *See Hunter* v. *Underwood*, 471 U.S. 222, 233 (1985). Nor do they present evidence that their convictions and resulting disenfranchisement resulted from intentional racial discrimination in the operation of the state's criminal justice system. *See McCleskey* v. *Kemp*, 481 U.S. 279, 297-98 (1987). Instead, they present statistical evidence that there are racial disparities in Washington's criminal justice system.

When this case was last before our court, we held that felon disenfranchisement laws can be challenged under section 2 by introducing such evidence. *Farrakhan* v. *Washington*, 338 F.3d 1009, 1016, 1020 (9th Cir. 2003) ("*Farrakhan I*"). Based on the statistical evidence presented by plaintiffs, the district court on remand found that "there is discrimination in Washington's criminal justice system on account of race." But the court reasoned that this was only one relevant factor in section 2's "totality of circumstances" balancing test. *See* 42 U.S.C. § 1973(b); S. Rep. No. 97-417, at 28-29 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177, 206-07; *see also Thornburg* v. *Gingles*, 478 U.S. 30, 46 (1986). It concluded that other factors counterbalanced plaintiffs' evidence of racial disparities, and therefore granted summary judgment to defendants.

[1] Three circuits—two sitting en banc—have disagreed with *Farrakhan I* and concluded that felon disenfranchisement laws are categorically exempt from challenges brought under section 2 of the VRA. *See Johnson* v. *Governor of Fla.*, 405 F.3d 1214, 1234 (11th Cir. 2005) (en banc); *Hayden* v. *Pataki*, 449 F.3d 305, 323 (2d Cir. 2006) (en banc); *Simmons* v. *Galvin*, 575 F.3d 24, 41 (1st Cir. 2009), *petition for cert. filed*, 78 U.S.L.W. 3461 (U.S. Feb. 1, 2010) (No. 09-920). In light of those opinions, we conclude that the rule announced in *Farrakhan I* sweeps too broadly. Felon disenfranchisement laws have a long history in the United States. *See Green* v. *Bd. of Elections of N.Y.C.*, 380 F.2d 445, 450 & n.4 (2d Cir. 1967). These laws predate the Jim Crow era and, with a few notable exceptions, *see, e.g.*, *Hunter*, 471 U.S. at 229 (con-

cluding that an Alabama constitutional provision "was enacted with the intent of disenfranchising blacks"), have not been adopted based on racial considerations. Many such laws were in effect when the Fourteenth and Fifteenth Amendments were ratified, *see Hayden*, 449 F.3d at 317 n.12 (listing twenty-nine state constitutional provisions); indeed, felon disenfranchisement has an affirmative sanction in the Fourteenth Amendment, *Richardson* v. *Ramirez*, 418 U.S. 24, 54 (1974). Congress was no doubt aware of these laws when it enacted the VRA in 1965 and amended it in 1982, yet gave no indication that felon disenfranchisement was in any way suspect. Today, an overwhelming number of states—including all states in our circuit—disenfranchise felons. *See* The Sentencing Project, *Felony Disenfranchisement Laws in the United States* 3 (Mar. 2010), *available at* http://sentencing project.org/doc/publications/fd_bs_fdlawsinusMarch2010. pdf.

**[2]** There is an additional reason to be skeptical that felon disenfranchisement laws can be challenged under section 2 of the VRA. By definition, felon disenfranchisement takes effect only after an individual has been found guilty of a crime. This determination is made by the criminal justice system, which has its own unique safeguards and remedies against arbitrary, invidious or mistaken conviction. *See, e.g.*, 28 U.S.C. § 2254; *Heck* v. *Humphrey*, 512 U.S. 477, 486-87 (1994).

**[3]** In light of these considerations, we hold that plaintiffs bringing a section 2 VRA challenge to a felon disenfranchisement law based on the operation of a state's criminal justice system must at least show that the criminal justice system is infected by *intentional* discrimination or that the felon disenfranchisement law was enacted with such intent. Our ruling is limited to this narrow issue, and we express no view as to any of the other issues raised by the parties and amici. We also leave for another day the question of whether a plaintiff who has made the required showing would *necessarily* establish that a felon disenfranchisement law violates section 2.

**[4]** Because plaintiffs presented no evidence of intentional discrimination in the operation of Washington's criminal justice system and argue no other theory under which a section 2 challenge might be sustained, we conclude that they didn't meet their burden of showing a violation of the VRA. Accordingly, the district court didn't err when it granted summary judgment against them.

**AFFIRMED.**

---

THOMAS, Circuit Judge, with whom SCHROEDER, McKEOWN, and WARDLAW, Circuit Judges, join, concurring:

I agree that the judgment of the district court should be affirmed, but on different grounds. I would hold that the claims for prospective injunctive relief are moot, and that the district court should be affirmed on the remainder of the claims for the reasons provided by the district court. On this record, we need go no further.

I

"As a general rule, if a challenged law is repealed or expires, the case becomes moot." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994); *see also Bunker Ltd. Partnership v. United States*, 820 F.2d 308, 312 (9th Cir. 1987) (holding that new legislation superseding prior law rendered challenge to prior statute moot).

In this case, after the district court issued its decision on remand, Washington repealed its felon disenfranchisement statute and enacted a new provision. Among other changes, Washington law now provides that the voting rights of felons will be "provisionally restored," at such time as those convicted under Washington state law are no longer under the

authority of the Washington Department of Corrections. An Act Relating to the Restoration of the Right to Vote for People Who Were Convicted of Felonies, ch. 325, 2009 Wash. Sess. Laws 1649 (codified at Wash. Rev. Code §§ 9.92.066, 9.94A.637, 9.94A.885, 9.96.050, 10.64.140, 29A.08.520).

The plaintiffs posit that the new law actually increases disenfranchisement; the State disputes this contention. Regardless, the legal landscape has materially changed. Plaintiffs sought to enjoin operation of the prior statute. That prospective relief is no longer available. Plaintiffs now request that we enjoin operation of the new statute. However, the district court has not had the opportunity to address that issue in the first instance, and the empirical analysis that formed the basis of the claim has changed. Therefore, I would either dismiss the portion of the appeal that relates to prospective injunctive relief as moot or, as Judge McKeown suggested in her dissent to the panel opinion, remand the case to the district court for re-examination in light of the new legislation. *Farrakhan v. Gregoire*, 590 F.3d 989, 1016-18 (9th Cir. 2010) (McKeown, J., dissenting).

II

As to the claims that are not moot,[1] I would affirm the judgment of the district court as entered on remand. *Farrakhan v. Gregoire*, No. CV-96-076-RHW, 2006 WL 1889273 (E.D. Wash. July 7, 2006). The district court thoroughly considered and weighed the traditional § 2(b) factors, often referred to as "the Senate Factors." S. Rep. No. 97-417, at 28-29 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177; *Thornburg v. Gingles*,

---

[1]Plaintiffs' challenge to Wash. Const. art. VI, § 3, and plaintiffs' damage claims were not rendered moot by passage of the new statute. Additionally, plaintiffs' claims for declaratory relief are arguably not moot to the extent that the provisions of the new and the old statutes are coextensive and the plaintiffs are subject to the same harm. *Jacobus v. State of Alaska*, 338 F.3d 1095, 1102-05 (9th Cir. 2003).

478 U.S. 30, 47 (1986). The district court properly concluded that, considering the totality of the circumstances, Washington's felon disenfranchisement law does not violate the Voting Rights Act. Therefore, I agree that the judgment should be affirmed.

As I understand the majority opinion, it does not disturb the holding in *Farrakhan v. Washington*, 338 F.3d 1009, 1019 (9th Cir. 2003) that a § 2 analysis requires consideration of factors external to the challenged voting mechanism itself. Nor does the majority opinion categorically prohibit a § 2 challenge to a felon disenfranchisement statute. With that understanding, I concur in the majority opinion.

Congress enacted the Voting Rights Act of 1965 for the broad remedial purpose of eliminating racial discrimination in voting. *South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966). In enacting § 2, Congress noted that it was impossible to predict the variety of means that would be used to infringe on the right to vote and that the voting rights landscape was marked by innovation and discrimination.[2] Congress's express objective in amending § 2 was to "broaden the protection afforded by the Voting Rights Act." *Chisom v. Roemer*, 501 U.S. 380, 404 (1991). Thus, examination of factors external to the challenged voting mechanism is a required part of a § 2 analysis.

Section 2 provides, without limitation, that any voting qualification that denies citizens the right to vote in a discriminatory manner violates the Voting Rights Act. 42 U.S.C. § 1973; *see also Allen v. State Bd. of Elections*, 393 US. 544, 566-67

---

[2]S. Rep. No. 89-162, at 5 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2508, 2562 (joint views of Senators Dodd, Hart, Long, Kennedy, Bayh, Burdick, Tydings, Dirksen, Hruska, Fong, Scott, and Javits); H.R. Rep. No. 89-439, at 10 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2437, 2441 (describing how "even after apparent defeat resisters s[ought] new ways and means of discriminating," and, as a result, rejecting the case by case approach that "too often ha[d] caused no change in result, only in methods.")

(1969) (noting that Congress intentionally chose the expansive language "voting qualifications or prerequisite to voting, or standard, practice, or procedure" for § 2 so as to be "all-inclusive of any kind of practice" that might be used by states to deny citizens the right to vote (internal quotation marks omitted)). There is no categorical exclusion for felon disenfranchisement laws in the text of the statute. If Congress had intended categorically to exclude certain laws from the reach of § 2, it could have easily done so explicitly. It may still do so, if it chooses.

That being said, in my view, establishing that a particular felon disenfrancement law violates § 2 because it discriminates on the basis of race will be very difficult. As we know, felon disenfranchisement provisions are presumptively constitutional. *Richardson v. Ramirez*, 418 U.S. 24, 54-55 (1974). A state's criminal justice system is a complex organization, with many factors contributing to the ultimate incarceration of a particular person. Of course, individual decisions can, in the aggregate, result in a prison population that is racially disproportionate. That is the thrust of the plaintiffs' argument in this case: that a multitude of small discriminatory decisions (whether intentional or not) have led to incarceration of minorities in percentages that cannot be explained by non-racial factors. However, that result alone does not, in my judgment, compel the conclusion that the felon disenfranchisement law violates § 2. If it did, then enforceability of felon disenfranchisement laws simply would depend on whether prison populations mirrored general population demographics. Using that logic, if the prison population deviated from the norm in a statistically significant way, then felon disenfranchisement would be enjoined; if the prison population returned to normal distributions, the injunction would be lifted. That is not the foundation of a § 2 violation. Indeed, Congress rejected this reasoning when it provided elsewhere in the statute that "nothing in this section establishes a right to have members of a protected class elected *in numbers equal to their proportion in the population*." 42

U.S.C. § 1973(b) (emphasis added). We have also noted that "a bare statistical showing of disproportionate *impact* on a racial minority does not satisfy the § 2 'results' inquiry." *Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 595 (9th Cir. 1997) (emphasis in original). Thus, in my view, the district court properly analyzed the data presented by the plaintiffs in the context of the totality of the circumstances and in consideration of the Senate Factors.

On the other hand, one can conceive of circumstances in which felon disenfranchisement laws could operate to violate § 2, whether by the structure or intent of the law itself, or by other means. Indeed, the Supreme Court has made it clear that states cannot use felon disenfranchisement as a tool to discriminate on the basis of race, even if the laws are facially race-neutral. *Hunter v. Underwood*, 471 U.S. 222, 233 (1985). Thus, in my view, a categorical exclusion of felon disenfranchisement laws from the reach of § 2 is inappropriate, either as a matter of judicial construct or statutory interpretation.

## III

I respectfully part company with the majority to the extent that it suggests that proof of discriminatory intent is required to establish a § 2 violation. Congress amended § 2 in 1982 "to make clear that proof of discriminatory intent is not required to establish a violation of Section 2." S. Rep. No. 97-417, at 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 177, 179; *see also Ruiz v. City of Santa Maria*, 160 F.3d 543, 557 (9th Cir. 1998) (noting Congress's statement that the "intent test" was "unnecessarily divisive [in that] it involve[d] charges of racism on the part of individual officials or entire communities," it "placed an inordinately difficult burden of proof on plaintiffs," and it "asked the wrong question" (internal quotation marks omitted, alterations in the original)). This is a question we need not decide on this record or in this case.

With these observations, I concur.

---

GRABER, Circuit Judge, concurring in the judgment:

I concur in the judgment. Because I would resolve the case on the ground that we specifically remanded to the district court, I would not reach the issue addressed by the majority. I therefore do not concur in the majority opinion.

In *Farrakhan v. Washington*, 338 F.3d 1009, 1016 (9th Cir. 2003), we held that Plaintiffs' felon disenfranchisement claim is cognizable under Section 2 of the Voting Rights Act ("VRA"). We held that the district court had applied an erroneous standard instead of the correct "totality of the circumstances" standard. *Id.* at 1016-19. Rather than apply the test ourselves, we remanded to the district court for it to "make any requisite factual findings following an appropriate evidentiary hearing, if necessary, and assess the totality of the circumstances." *Id.* at 1020.

We denied Defendants' petition for rehearing en banc. *Farrakhan v. Washington*, 359 F.3d 1116, 1116 (9th Cir. 2004) (order). Seven judges dissented from denial of rehearing en banc. *Id.* at 1116-27 (Kozinski, J., dissenting from denial of rehearing en banc). The dissenting judges would have reversed the judgment of the three-judge panel because of their view that Section 2 of the VRA does not reach felon disenfranchisement laws. *Id.* The Supreme Court denied certiorari.[1] *Locke v. Farrakhan*, 543 U.S. 984 (2004).

On remand, the parties conducted additional discovery and

---

[1]I note that we voted to deny rehearing en banc and that the Supreme Court denied certiorari only as important procedural history. I do not intend to imply that either we or the Court actually voted on the merits of the legal issue.

filed new affidavits and other submissions, including expert reports. The district court dutifully applied the "totality of the circumstances" test and concluded that, "[t]aking all of the relevant factors into account," Washington's felon disenfranchisement law does not violate the VRA. *Farrakhan v. Gregoire*, No. CV-96-076, 2006 WL 1889273, at *9 (E.D. Wash. July 7, 2006) (unpublished). I agree with the district court's thorough analysis and its conclusion that, although one of the many relevant factors supports a finding of discrimination, none of the other factors does. *Id.* at *6-9. I would affirm the district court on that ground.

Accordingly, there is no need to reach the question whether felon disenfranchisement laws may be challenged under Section 2 of the VRA. Reaching that question is unnecessary because we can affirm on the ground described above—the ground that we mandated the district court to determine.

Perhaps more importantly, judicial prudence strongly suggests that we decline to reach that question. We already decided that question in this case more than seven years ago. We declined to rehear the case en banc, over a vigorous dissent, and the Supreme Court denied certiorari. In the many years that have followed, the parties have conducted additional discovery, filed voluminous submissions, and written dozens of pages of briefs. The district court followed our mandate in detail and resolved the case on the ground that we had specified. On appeal to this court, the parties filed additional briefs, and the three-judge panel, too, resolved the appeal on the ground that it previously had specified.

Once we have resolved a preliminary and important point of law and the full court and the Supreme Court have declined to intervene, judicial prudence strongly suggests that we should not later disturb that ruling—and thereby undo years of effort by the parties and the courts—in the very same case when doing so is entirely unnecessary. The animating principles of the "law of the case" doctrine apply here: "when a

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). I do not question the authority or legitimacy of the majority's opinion; I merely disagree with its discretionary decision to resolve this case on its chosen ground.[2] Were the result of this case to hinge on that ground, or were there some compelling reason to reach the issue,[3] I might well come to a different conclusion.

---

[2]The decision to revisit a precedent in a later, different case presents a different issue than whether to revisit an issue decided in an earlier stage of the same case.

[3]That the Supreme Court may soon vote to decide the issue is, in my view, a reason to defer submission of this case, not a reason to decide this case with haste.