**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,
*Plaintiff-Appellant,*

v.

ROBERT LOHN, Northwest Regional
Administrator of National Marine
Fisheries Service; CARLOS M.
GUTIERREZ, Secretary of
Commerce, U.S. Department of
Commerce,

*Defendants-Appellees.*

No. 05-35638

D.C. No.
CV-02-02505-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
November 15, 2006—Portland, Oregon

Filed April 26, 2007

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Brent Plater, Center for Biological Diversity, San Francisco, California, argued the cause for the plaintiff-appellant, and filed briefs.

M. Alice Thurston, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, argued the cause for the defendants-appellees; Sue Ellen Woolridge, Assistant Attorney General, Keith Rizzardi and David Shilton, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, Melanie J. Rowland, Office of the General Counsel, National Oceanic and Atmospheric Administration, Seattle, Washington, and Benjamin C. Jesup, Office of the Solicitor, U.S. Department of the Interior, Washington, DC, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether the federal government's policy for listing killer whales under the Endangered Species Act is invalid.

I

The Center for Biological Diversity ("Center"), along with eleven co-petitioners not parties to this appeal, petitioned the National Marine Fisheries Service ("Service") to list the Southern Resident killer whale ("Southern Resident") as an endangered species under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.[1] Applying its Distinct Population Segment Policy ("DPS Policy")[2] for listing endangered species under the ESA, the Service issued a proposed ruling that concluded listing the Southern Resident was "not warranted" because the Southern Resident was not "significant" to its taxon. *See* 67 Fed. Reg. 44,133 (July 1, 2002).

The Center challenged the Service's proposed determination in district court. On cross-motions for summary judgment, the district court granted in part and denied in part. *Ctr. for Biological Diversity v. Lohn*, 296 F. Supp. 2d 1223, 1243 (W.D. Wash. 2003). The district court concluded that the DPS Policy was not contrary to congressional intent regarding the ESA, and that it was a reasonable interpretation of the ambiguous term "distinct population segment."[3] *Id.* at 1235-36.

---

[1]As the facts and the procedural posture of the case are thoroughly set forth in the district court's published order, we repeat them here only as necessary. *See Ctr. for Biological Diversity v. Lohn*, 296 F. Supp. 2d 1223 (W.D. Wash. 2003).

[2]*See* Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4722 (Feb. 7, 1996). (notice of policy).

[3]The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any *distinct population segment* of any species of vertebrate

However, the district court set aside the Service's "not warranted" finding because it failed to utilize the best available scientific data when determining whether the Southern Resident was "significant" under that policy. *Id.* at 1240-41. The district court ordered the Service to reexamine according to the declared legal standard whether the Southern Resident should be listed as an endangered species and to issue a new finding within twelve months. *Id.* at 1243.

Pursuant to the district court's order, the Service reexamined the listing petition and issued a proposed rule that recommended listing the Southern Resident as a threatened species. *See* 69 Fed. Reg. 76,673 (Dec. 22, 2004). The Center then appealed from the district court's judgment, arguing that the Service's DPS Policy is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and that the policy is unlawfully restrictive. Subsequently, the Service issued a final rule listing the Southern Resident as an endangered (as opposed to threatened) species. *See* 70 Fed. Reg. 69,903 (Nov. 18, 2005).

## II

The Service contends that this case is now moot because it has, since the district court's decision, issued a proposed rule

---

fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16) (emphasis added). The Act, however, fails to define the term "distinct population segment." The Service, in conjunction with the Fish and Wildlife Service, published the DPS Policy in 1996 to clarify their interpretation of the term "distinct population segment." *See* 61 Fed. Reg. 4722. According to the DPS Policy, the Service evaluates three factors when considering identification of a "distinct population segment": (1) "Discreteness of the population segment in relation to the remainder of the species to which it belongs;" (2) "The significance of the population segment to the species to which it belongs; and" (3) "The population segment's conservation status in relation to the Act's standards for listing (i.e., is the population segment, when treated as if it were a species, endangered or threatened?)." *Id.* at 4725.

that recommended listing the Southern Resident as a threatened species and ultimately has issued a final rule listing the Southern Resident as an endangered species.

## A

**[1]** If an event occurs during the pendency of the appeal that renders the case moot, we lack jurisdiction. *See United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984). When a plaintiff seeks declaratory relief, as here, the "test for mootness . . . is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174-75 (9th Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Stated another way, the 'central question' before us is 'whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.' " *Gator.Com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (quoting *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000)). The Service carries the burden of establishing mootness. *See S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1134 (9th Cir. 2004).

## B

**[2]** The Center asks us to declare the Service's DPS Policy unlawful and to "instruct [the Service] not to apply the DPS Policy in making a final determination on the agency's decision to finalize the proposed rule to list the Southern Resident killer whale." Because the Service has issued its final rule listing the Southern Resident as an endangered species, we cannot instruct the Service to complete the final determination process without applying the DPS Policy. We cannot grant the injunctive relief the Center seeks and therefore this claim for

relief is moot. *See Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978) ("Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot.").

**[3]** We have held, however, that where, as here, both injunctive and declaratory relief are sought but the request for injunctive relief is rendered moot, the case is not moot if declaratory relief would nevertheless provide meaningful relief. *Biodiversity Legal Found.*, 309 F.3d at 1175. In this case, no "live" controversy remains between the parties because the challenged activity has "evaporated or disappeared." *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1989) (stating that "[a] case or controversy exists justifying declaratory relief only when 'the challenged government activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties' " (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). In short, declaring the DPS Policy unlawful would serve no purpose in this case because the Service has listed the Southern Resident as an endangered species, the Center's ultimate objective. That the DPS Policy *might* adversely affect the Southern Resident's endangered species status or the Service's listing determination of certain *other* killer whale populations at some indeterminate time in the future is too remote and too speculative a consideration to save this case from mootness. *See id.* (explaining that no case or controversy exists justifying declaratory relief where the purported "adverse effect" is " 'so remote and speculative that there [is] no tangible prejudice to the *existing interests* of the parties' " (alteration and emphasis in original) (quoting *Super Tire Eng'g Co.*, 416 U.S. at 123)). We conclude, therefore,

that the Center's claim for declaratory relief is also moot, as we can provide no meaningful relief.[4]

## C

**[4]** The Center argues that even if this case is technically moot, we have jurisdiction to consider the merits because one of the exceptions to the mootness doctrine applies. We have recognized several major exceptions to mootness, including for (1) "collateral legal consequences," (2) "wrongs capable of repetition yet evading review," and (3) "voluntary cessation." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005). We are persuaded that none of these exceptions fits this case.

## 1

**[5]** The first exception to the mootness doctrine applies where an appellant "would suffer collateral legal consequences if the actions being appealed were allowed to stand." *Pub. Utilities Comm'n of the State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996). The Center argues that the "collateral legal consequences" exception applies because, relying on the district court's order and the doctrine of collateral estoppel, the Service has attempted to preclude the Center

---

[4]The Center argues that our decision in *Biodiversity Legal Foundation*, 309 F.3d 1166, compels a contrary conclusion. There, we explained that the plaintiffs sought two remedies: "(1) to compel the Service to make the requested listing determinations [under the ESA]; and (2) to declare that 16 U.S.C. § 1533 requires the Service to make initial listing determinations within twelve months after receiving a petition." *Id.* at 1173. Although the agency completed the listing determinations encompassed within the complaint while the case was on appeal, we held that the case was not moot because the "allegedly wrongful delay is capable of repetition yet evading review," a recognized exception to mootness. *Id.* at 1173-74. But the Center's reliance on *Biodiversity Legal Foundation* is unavailing, because the Center fails to argue that the allegedly wrongful conduct of applying the DPS Policy to a listing determination is similarly capable of repetition yet evading review. Moreover, as discussed below, we do not believe this exception to mootness applies in this case.

from challenging the DPS Policy in other legal proceedings. But this argument is foreclosed by our precedent, as the Center's suggested harm is merely hypothetical or speculative. *See Burrell*, 415 F.3d at 999 (holding that a party "may not invoke as an exception to the mootness doctrine the specter of continuing legal harm from res judicata or collateral estoppel arising from his mooted claims when such harm is merely hypothetical and speculative"). Furthermore, as we consider below, our general practice of vacating the district court's judgment "is commonly utilized in precisely this situation to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950); *see also Burrell*, 415 F.3d at 999. The Center suggests no other collateral legal consequences and we perceive none. Accordingly, this exception to mootness does not apply.

2

**[6]** The exception for "wrongs capable of repetition yet evading review" only applies when two criteria are met. *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994). "First, there must be a 'reasonable expectation' that the same complaining party will be subject to the same injury again. Second, the injury suffered must be of a type inherently limited in duration such that it is likely always to become moot before federal court litigation is completed." *Id.* at 1509-10 (citations omitted). Assuming, *arguendo*, that the Center will be subject to the same purported injury again, we are convinced that the second requirement is not met. The Service's application of the DPS Policy to deny a petition to list a species as endangered, the alleged injury here, is not "a type inherently limited in duration such that it is likely always to become moot before federal court litigation is completed." In the normal course, a "not warranted" determination does not "resolve[ ] itself without allowing sufficient time for appellate review." *Biodiversity Legal Found.*, 309 F.3d at 1174. Indeed, we routinely review "not warranted" determina-

tions. *See, e.g.*, *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife*, 475 F.3d 1136 (9th Cir. 2007); *Ctr. for Biological Diversity v. Badgley*, 335 F.3d 1097 (9th Cir. 2003). Accordingly, we are unpersuaded that this exception to mootness applies.

3

**[7]** Finally, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). In this case, however, the Service did not voluntarily cease applying the challenged DPS Policy during the final listing determination of the Southern Resident. Rather, the Service issued the final rule listing the Southern Resident as an endangered species after reexamining the listing petition, as ordered by the district court, applying the DPS Policy in light of the district court's ruling. We therefore conclude that the "voluntary cessation" exception to mootness does not apply.

III

Having concluded that the case is moot, we consider vacatur. The Center contends that we should vacate only the portion of the district court's order adverse to the Center.[5] We are ultimately unpersuaded by the Center's argument.[6] Indeed, in

---

[5]The Center fails to specify which portion of the district court's order it believes is adverse to its position. The arguments on appeal suggest that the Center would have us vacate only the district court's conclusion that the DPS Policy was not contrary to congressional intent regarding the ESA, and that the DPS Policy was a reasonable interpretation of the ambiguous term "distinct population segment." *See Ctr. for Biological Diversity*, 296 F. Supp. 2d at 1233-36 (section II.B.2).

[6]The Center's reliance on *Moore v. Kayport Package Exp.*, 885 F.2d 531 (9th Cir. 1989), for this proposition is misplaced, because in that case, unlike here where the case is moot, we affirmed in part and remanded in part for further proceedings. *Id.* at 533.

*Kitlutsisti v. ARCO Alaska, Inc.*, 782 F.2d 800 (9th Cir. 1986), we declined to adopt the "novel procedure" that "we should selectively vacate portions of a district court opinion" not appealed. *Id.* at 801-02.

When a case becomes moot on appeal by happenstance, our established practice is to vacate the entire district court judgment. *Dilley v. Gunn*, 64 F.3d 1365, 1369-71 (9th Cir. 1995); *see also Munsingwear*, 340 U.S. at 39 ("The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss."). We have recognized, however, an exception to this general practice where the appellant's unilateral acts prevent appellate review of an adverse judgment. *Dilley*, 64 F.3d at 1370. That exception does not apply in this case because the Service, here the appellee, did not unilaterally act to impede our review, but simply issued a new listing determination upon reexamination, as ordered by the district court. We discern no persuasive reason why we should deviate from our established practice of vacating the district court's order.

IV

For the reasons discussed above, we **VACATE** the district court's order and **REMAND** with instructions to **DISMISS** the case as moot.