**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WEST COAST SEAFOOD PROCESSORS
ASSOCIATION,
   *Applicant-in-intervention-*
      *Appellant,*

    v.

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; PACIFIC MARINE
CONSERVATION COUNCIL, INC.,
   *Plaintiffs-Appellees,*

MAKAH INDIAN TRIBE,
   *Intervenor-Appellee,*

GARY LOCKE, Secretary of
Commerce; NATIONAL MARINE
FISHERIES SERVICE; NATIONAL
OCEANIC AND ATMOSPHERIC
ADMINISTRATION,
   *Defendants-Appellees.*

No. 09-16245

DC No.
3:01 cv-0421 JL

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; PACIFIC MARINE
CONSERVATION COUNCIL, INC.,
            *Plaintiffs-Appellees,*

MAKAH INDIAN TRIBE,
            *Intervenor-Appellee,*

            v.

GARY LOCKE, Secretary of
Commerce; NATIONAL MARINE
FISHERIES SERVICE; NATIONAL
OCEANIC AND ATMOSPHERIC
ADMINISTRATION,
            *Defendants-Appellees.*

No. 09-16796

DC No.
3:01 cv-0421 JL

OPINION

Appeals from the United States District Court
for the Northern District of California
James Larson, Magistrate Judge, Presiding

Argued and Submitted
June 14, 2010—San Francisco, California

Filed July 6, 2011

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Bea

**COUNSEL**

Gwen L. Fanger, Davis Wright Tremaine LLP, San Francisco, California, for the applicant-in-intervention-appellant.

Selena K. Kyle, Natural Resources Defense Council, San Francisco, California, for the plaintiffs-appellees.

**OPINION**

TASHIMA, Circuit Judge:

West Coast Seafood Processors Association ("WCSPA") appeals from the district court's denial of its motion to intervene as a defendant in this case, in which the Natural Resources Defense Council, Inc., and Pacific Marine Conservation Council, Inc. (together, "NRDC") challenged the National Marine Fisheries Service's ("NMFS") program to preserve groundfish species off the coast of California, Oregon, and Washington. Because the litigation between NRDC and NMFS has ended, we dismiss WCSPA's appeal as moot.

**I.**

Exercising its authority under the Magnuson-Stevens Act, 16 U.S.C. § 1801 *et. seq.*, NMFS uses two primary and inter-related tools to regulate Pacific groundfish fisheries: (1) the Pacific Coast Groundfish Fishery Management Plan ("Groundfish Plan"), established in 1982 and amended periodically since, which sets forth procedures for assessing the health of groundfish populations and for formulating preservation measures; and (2) annual or biennial "specifications and management measures" ("Specifications"), which set quotas on the catch for each overfished species and impose restrictions on the methods used to catch such species.

**II.**

This case was already eight years old when WCSPA sought to intervene, both as of right and permissively, but in one sense the case was brand new. NRDC originally filed the case as a challenge to Amendment 12 of the Groundfish Plan, which governs the development of rebuilding plans for overfished species. WCSPA began to participate as an amicus in late 2002, but it did not move to intervene. Between 2004 and 2007, NRDC amended its complaint four times, each time to

add a challenge to a new amendment to the Groundfish Plan. WCSPA moved to intervene in anticipation of the Fourth Amended Complaint, but the presiding Magistrate Judge denied the motion as untimely, and WCSPA did not appeal.

In 2009, NRDC changed the nature of the case by filing a Fifth Amended Complaint that added a challenge to NMFS' 2009-10 Specifications. Whereas previously the case had concerned only the Groundfish Plan, the Fifth Amended Complaint brought in an attack on NMFS' other major regulatory mechanism, the Specifications that set fishing quotas.[1] In the past, NRDC had challenged the Specifications in separate actions. Between 2002 and 2005, it filed separate actions challenging the annual Specifications for 2002, 2003, and 2004, and the biennial Specifications for 2005-06. WCSPA successfully intervened in all four actions, thereby demonstrating a strong interest in fully participating in litigation concerning the Specifications. Predictably, WCSPA also moved to intervene in this case two days after NRDC filed its challenge to the 2009-10 Specifications in its Fifth Amended Complaint. But the Magistrate Judge[2] denied the motion as untimely because of the age of the litigation. On appeal, WCSPA argues that the Magistrate Judge erred by basing his decision on the age of the litigation (eight years) rather than the time that had elapsed between the filing of the Fifth Amended Complaint and the motion to intervene (two days).

While this appeal was pending, however, the underlying litigation — the dispute between NRDC and NMFS — fully ran its course. On the parties' cross-motions for summary judg-

---

[1]At its inception, this case was consolidated with a separate case that challenged the 2001 Specifications, but that separate case was dismissed after we resolved the challenge to the 2001 Specifications on appeal in 2003. *See Natural Res. Def. Council, Inc. v. Evans*, 316 F.3d 904 (9th Cir. 2003).

[2]All parties consented under 28 U.S.C. § 636(c)(1) to a Magistrate Judge entering judgment in the case.

ment, the Magistrate Judge held that the Specifications for three species violated the Magnuson-Stevens Act, but that the Specifications for four other species did not. In an Order on Remedy, filed April 29, 2010 — six weeks before we heard oral argument on this appeal — the Magistrate Judge directed NMFS to establish new Specifications within one year and retained jurisdiction to ensure the agency's compliance. Although NMFS filed a notice of appeal from the Order on Remedy, it voluntarily dismissed that appeal before briefing by either party. The Magistrate Judge entered final judgment on May 5, 2011.

## III.

**[1]** An appeal is moot if there exists no " 'present controversy as to which effective relief can be granted.' " *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007) (quoting *Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993)). WCSPA appeals from the denial of its motion to intervene in a case that the district court has since decided, through the Order on Remedy and the subsequent final judgment, from which neither party has appealed. Because the underlying litigation is over, we cannot grant WCSPA any "effective relief" by allowing it to intervene now. The appeal is therefore moot. *See United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) (dismissing as moot an appeal of a denial of a motion to intervene where the underlying litigation was voluntarily dismissed) ("Since there is no longer any action in which appellants can intervene, judicial consideration of the [intervention] question would be fruitless."); *cf. Canatella v. California*, 404 F.3d 1106, 1109 n.1 (9th Cir. 2005) (holding that entry of judgment in the underlying litigation does not moot an appeal from a denial of a motion to intervene, if one of the parties keeps the underlying litigation live by pursuing an appeal).

**[2]** The "capable of repetition, yet evading review" exception to mootness does not apply. That exception applies only

in "extraordinary cases." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc). Although it might apply to an appeal of the underlying litigation about the biennial Specifications, it does not apply to WCSPA's appeal of the denial of its motion to intervene.

**[3]** First, the "capable of repetition" prong of the exception requires a "reasonable expectation" that the same party will confront the same controversy again. *Feldman v. Bomar*, 518 F.3d 637, 644 (9th Cir. 2008). On this appeal, the controversy is whether WCSPA's motion to intervene was timely. Unique circumstances produced this controversy. For eight years, NRDC maintained an action challenging amendments to the Groundfish Plan, a subject that did not prompt WCSPA to intervene, at least not for the first six years of the case. NRDC then amended its complaint to add an attack on the 2009-10 Specifications, a subject that WCSPA did consider intervention-worthy. The district court denied the motion to intervene as untimely because of the age of the litigation. WCSPA disagrees and argues that the motion came in timely response to the Fifth Amended Complaint. It is not reasonable to expect that this dispute about timeliness will arise again. The hybrid Groundfish Plan/Specifications litigation is over. Although NRDC will likely challenge future Specifications and WCSPA will likely file future motions to intervene, the timeliness issue, which is the subject of this appeal, will not likely reappear (as it did not appear in any of the other cases in which the NRDC challenged earlier Specifications and in which WCSPA successfully intervened), unless the same unlikely, hybrid scenario develops again over the next decade. Such a speculative possibility does not constitute a "reasonable expectation." *See Sze v. INS*, 153 F.3d 1005, 1009 (9th Cir. 1998); *Luckie v. EPA*, 752 F.2d 454, 458 (9th Cir. 1985).

**[4]** Second, the intervention issue does not "evade review." A controversy evades review only if it is " 'inherently limited in duration such that it is likely always to become moot before federal court litigation is completed.' " *Ctr. for Biological*

*Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (quoting *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994)). With respect to this inquiry, one must not conflate the issue in the underlying litigation — whether the 2009-10 Specifications are valid — with the controversy in this appeal over WCSPA's motion to intervene. The controversy over the 2009-10 Specifications does evade review, because the Specifications are biennial. *See Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999) (two-year permit evades review); *see also Evans*, 316 F.3d at 911 (one-year NMFS specifications "evade review"). But the mootness *vel non* of the controversy over WCSPA's right to intervene depends on the duration of the underlying litigation, not on the duration of the Specifications. *See Canatella*, 404 F.3d at 1109 n.1. Therefore, the intervention controversy does not evade review because, by virtue of the very fact that the underlying dispute satisfies the mootness exception and could continue well past the two-year Specifications period, the intervention dispute is not "inherently limited in duration" nor "likely always to become moot." *Lohn*, 511 F.3d at 965. Had NMFS not voluntarily dismissed its appeal, the underlying case would have remained alive, and we could have granted WCSPA effective relief by allowing it to intervene. *See Canatella*, 404 F.3d at 1109 n.1. The intervention controversy avoids review here only because NMFS acquiesced in the court-ordered remedy by dismissing its appeal, not because the controversy is "inherently limited in duration." Therefore, the exception does not apply. *See Lohn*, 511 F.3d at 965.[3]

---

[3]The dissent contends that WCSPA "has at most two years to challenge the denial of its motion to intervene before its challenge becomes moot." Dissent at 9031. This statement conflates the underlying litigation with WCSPA's appeal. Because the Specifications are biennial, under mootness principles NRDC would have but two years to challenge them. That is not enough time; therefore, the exception applies. *See Evans*, 316 F.3d at 911. And because the exception applies, the underlying litigation could endure longer than two years — indeed, had NMFS not voluntarily dismissed its

**IV.**

In sum, these appeals are moot and no exception to mootness can revive them. Accordingly, these appeals are

**DISMISSED**.

---

BEA, Circuit Judge, dissenting:

The majority concludes that the case is moot and does not reach its merits. I respectfully dissent since I conclude the case survives mootness because it falls in the "capable of repetition, yet evading review" exception to mootness. I would thus reach the merits of the appeal and reverse.

A seafood processors' trade association moved to intervene in a pending action, as of right and also permissively, two days after the magistrate judge had granted the plaintiff, an environmental organization, leave to file an amended complaint that challenged agency-set fishing quotas. For the past several years, the environmental organization had challenged such fishing quotas in separate federal court actions and the trade association had intervened in almost all of those actions. Here, however, the magistrate judge denied the trade association's motion to intervene on the sole ground the motion was untimely.

The proposed intervenor in this case is West Coast Seafood Processors Association ("WCSPA"), a nonprofit trade associ-

appeal, the litigation would still be ongoing now, despite the expiration of the Specifications. Because a remedy existed on WCSPA's motion to intervene for as long as the underlying litigation endured, and because the duration of the underlying litigation had no inherent limit (as its ten-year life span attests), the intervention controversy does not "evade review" under our case law. *See Lohn*, 511 F.3d at 965.

ation whose member companies, located in California, Oregon, and Washington, process fish taken from fisheries into consumable fish products. WCSPA appeals the magistrate judge's denial of its motion to intervene in this case brought by the Natural Resources Defense Council, Inc., and Pacific Marine Conservation Council, Inc. (together the "NRDC"), self-styled environmental organizations, against the Secretary of Commerce, the National Oceanic and Atmospheric Administration, and the National Marine Fisheries Service ("NMFS").

In its Fifth Amended Complaint, NRDC alleges that NMFS violated the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), 16 U.S.C. § 1801 *et seq.*, which directs NMFS to end overfishing and to increase the populations of overfished species off the coasts of the United States. NMFS adopts fishery management plans to accomplish this statutory mandate. These plans set target dates by which to increase overfished populations to certain levels, as well as procedures to impose fishing limits to achieve those targets. Pursuant to those procedures, NMFS separately announces fishing limits that set quotas, in metric tons, on the amount of fish that may be caught each year.

In years past, NRDC has sued NMFS on the Pacific Coast Groundfish Fishery Management Plan ("Groundfish Plan") amendments, contending that the amendments violated the Magnuson Act. Between 2004 and 2007, NRDC amended its original complaint four times, each time to incorporate a challenge to a newly adopted Groundfish Plan amendment. WCSPA did not intervene in the suits as a party because it was satisfied with NMFS's representation as to issues raised relating to the Groundfish Plan.

However, in separate federal actions, NRDC also sued NMFS to challenge the annual fishing quota specifications for 2002, 2003, and 2004, as well as the biennial specifications for 2005-06, which dealt with quotas (metric tons of fish).

WCSPA timely intervened in each case for each year (save one). Here, however, NRDC decided simply to amend its Groundfish Plan lawsuit by its Fifth Amended Complaint instead of following its longtime practice of bringing a separate and new lawsuit to challenge the 2009-10 specifications. Two days after the magistrate judge granted NRDC leave to so amend its complaint, WCSPA moved to intervene, as it had done in each of NRDC's separate, prior federal actions challenging fishing quotas since 2002. The magistrate judge here denied WCSPA's motion as untimely, and WCSPA appealed.

Given that NRDC fundamentally altered WCSPA's interest in this case when NRDC amended its complaint to challenge the 2009-10 fishing quotas, as opposed to another amendment to NMFS's fishery management plan, and given that WCSPA promptly moved to intervene after the magistrate judge granted NRDC leave to file the amended complaint, I find the magistrate judge below abused his discretion by such denial; hence, I would reverse.

## I.

I disagree with the majority that the panel cannot reach the merits of the appeal because it is moot. Mootness is determined by whether a present controversy exists as to which a court can grant any effective relief. *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 559 (9th Cir. 2009). I agree with the majority that because the subject of the controversy that once existed between the NRDC and NMFS—the 2009-10 specifications—has expired and is on the verge of being replaced by a new set of specifications, there is no longer any effective relief this court can grant to WCSPA.

Nonetheless, I conclude that this case falls within the "capable of repetition, yet evading review" exception to mootness. This exception applies if two requirements are met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is]

a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). The present case meets both of these requirements.

First, the challenged action here is too short in its duration to be fully litigated before a Court of Appeals and the Supreme Court prior to its expiration. The underlying lawsuit between NRDC and NMFS deals with fishing quota specifications which expire every two years. Once the fishing quota specifications expire, the controversy over WCSPA's right to intervene in the suit challenging the fishing quota specifications becomes moot. WCSPA thus has at most two years to challenge the denial of its motion to intervene before its challenge becomes moot. Both the Supreme Court and this court have held that two years is too short in duration for a case to be fully litigated. *S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 514-16 (1911) (order that expires by its terms after two years evades review); *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999) (a permit that expired in two years is too short for judicial review); *see also Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329-30 (9th Cir. 1992) (fishing quota specifications that expire in one year evade review).

Second, the challenged action is capable of repetition. The Supreme Court has explained it is enough that the litigant "faces some likelihood of becoming involved in the same controversy in the future." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980). The central consideration is "whether the controversy [is] *capable* of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original). Further, "[i]n estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc). For almost a decade before its Fifth

Amended Complaint, NRDC had, without exception, challenged fishing quotas in separate actions, and WCSPA had, with only one early exception, intervened in each of those actions. In the present case, WCSPA attempted to intervene in the fishing quota suit only two days after NRDC successfully amended its separate Groundfish Plan lawsuit to challenge the 2009-10 fishing quota specifications. Yet, the magistrate judge inexplicably concluded that WCSPA's motion to intervene was untimely despite WCSPA's promptness in filing its motion. Given that NRDC successfully prevented WCSPA from intervening in its fishing quota suit, it is now likely that NRDC will pursue its fishing quota challenges by amendment to future Groundfish Plan suits against NMFS rather than by separate action. Hence, WCSPA faces some likelihood of becoming involved in the same controversy in the future.

Because both prongs of the repetition and evasion exception are satisfied, I conclude this case falls within the "capable of repetition, yet evading review" exception to mootness. Therefore, I would reach the merits of WCSPA's appeal.

## II.

On the merits, I would hold that the magistrate judge abused his discretion when he denied WCSPA's motion to intervene as untimely. Under *United States v. Hinkson*, 585 F.3d 1247, 1251, 1262 (9th Cir. 2009) (en banc), a trial court abuses its discretion if it fails to apply the correct legal standard to decide an issue. If, however, the trial court applies the correct legal standard, there is no abuse of discretion unless the trial court's findings of fact, and its application of those findings of fact to the correct legal standard, are illogical, implausible, or without support in inferences that may be drawn from facts in the record. *Id.*

Here, the magistrate judge correctly identified the three factors that courts weigh to determine whether a motion to inter-

vene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson* ("*LULAC*"), 131 F.3d 1297, 1302 (9th Cir. 1997). But the magistrate judge abused his discretion because his findings as to those three factors are without support in inferences that may be drawn from facts in the record, as set out below.

## A.   Stage of the proceedings

To determine whether the "stage of the proceeding" factor supports a finding of untimeliness, the court should consider not only "what had *not* yet occurred" prior to the motion to intervene, but also "what *had* already occurred by that time." *See LULAC*, 131 F.3d at 1303 (emphases in original). This factor weighs heavily against allowing intervention as of right where the trial court has substantially engaged the issues in a case. *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). But the mere lapse of time, without more, is not necessarily a bar to intervention; "changed circumstance" may "suggest[ ] that the litigation is entering a new stage" and, therefore, "militate in favor of granting the application." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

The magistrate judge found that this factor weighed against timeliness in this case, but the reasons he cited for this finding are without support in inferences that may be drawn from facts in the record. The magistrate judge first noted that two related cases that challenged the 2001 and 2002 specifications, respectively, had been resolved on appeal. But this says little, if anything, about the stage of the proceedings in *this* case which dealt with fish quotas for 2009-10, not 2001 and 2002. This is true even as to the 2001 specifications case, which was consolidated with this case and then dismissed. The 2002 specifications case has an even more tenuous connection to this case because that case was never consolidated with this one. Moreover, WCSPA timely intervened in the

2002 specifications case, but later moved to participate in this case only as an amicus. The only reasonable inference is that WCSPA perceived its interest to be stronger in challenges to the quotas in the specifications than in challenges to the procedural reforms of the Groundfish Plan amendments.

The magistrate judge also noted that, back in August 2001, he had granted summary judgment in this case to NRDC, in part because Amendment 12 violated the Magnuson Act's requirement that rebuilding plans take the form of a fishery management plan, plan amendment, or proposed regulation. *NRDC v. Evans*, 168 F. Supp. 2d 1149, 1158 (N.D. Cal. 2001). But Amendment 12 is no longer at issue in this case because, by its own admission, "NRDC is no longer pursuing . . . claims [as to] Amendments 12 and 16-1 through 16-3." Only Amendment 16-4, which supersedes the prior amendments, is still at issue in this case. Summary judgment as to Amendment 12 therefore does not support the magistrate judge's finding that this case is at a late stage in the proceedings. *Cf. United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (motion that was pending as to the "bulk" of ongoing claims supported a finding that the motion to intervene came at a late stage in the litigation).

What the magistrate judge did not consider is that the filing of the Fifth Amended Complaint started the clock running as to the substance of that Amendment; the stage of the proceeding was now the initial stage of the proceeding with respect of NRDC's challenge to the 2009-10 specifications. The Fifth Amended Complaint challenged specifications for the first time in *this* case as to the 2009-10 specifications and quotas, rather than in a separate action as NRDC had done before without exception. Indeed, because NRDC did not file a separate action to challenge the 2009-10 specifications, the Fifth Amended Complaint challenged those specifications for the first time ever, in this case or any other. The magistrate judge therefore had not engaged—much less substantially engaged —the 2009-10 specifications in any prior proceeding in this

case. At the time WCSPA moved to intervene, this case was not "at issue;" NMFS had not even filed a responsive pleading to the Fifth Amended Complaint. *See LULAC*, 131 F.3d at 1303 (holding the stage of the proceedings supported a finding of untimeliness of the proposed intervention where the defendant had filed an answer). Thus, this case entered a new stage with the filing of the Fifth Amended Complaint.

Here, I find instructive our opinion in *Oregon*, where the State of Idaho moved to intervene as of right in litigation over the extent to which two other states could, consistent with the treaty rights of several Indian tribes, regulate fishing in a river that runs through all three states. 745 F.2d at 551. The district court, which five years earlier had approved a plan between the parties for managing fisheries in the river, denied Idaho's motion as untimely. *Id.* at 552. It did so even though the motion was filed soon after two Indian tribes had withdrawn from the fisheries management plan and the district court had ordered the parties to renegotiate the plan. *Id.* at 552. We reversed, largely because "the possibility of new and expanded negotiations" between the parties regarding a modified fisheries management plan constituted a "changed circumstance" and suggested the litigation was entering a new stage. *Id.* Far from agreeing with the district court that the stage of litigation disfavored intervention, we held that the changed circumstance essentially had reset the clock on the time for filing a motion to intervene, such that "the stage of the proceeding . . . militate[d] in favor of granting" Idaho's motion to intervene. *See id.*

In this case, I would likewise hold that the filing of the Fifth Amended Complaint constituted a changed circumstance that reset the timeliness clock. Even if, prior to WCSPA's motion to intervene in this case, "a lot of water had already passed underneath [the] litigation bridge" as to Plan amendments, *LULAC*, 131 F.3d at 1303, no water had passed underneath that bridge as to the 2009-10 specifications. The 2001 specifications case, which had been consolidated with this

case, was dismissed following our opinion in *NRDC*, 316 F.3d at 913; and none of the actions that challenged the 2002, 2003, 2004, and 2005-06 specifications/quotas were ever consolidated with this case. Significantly, WCSPA intervened as a full-fledged party in each of those actions. Thus, the magistrate judge's finding that WCSPA's motion to intervene came too late in the proceedings is without support in inferences that may be drawn from facts in the record.

## B.   Prejudice to the parties

To determine whether intervention prejudices the other parties to a case, the court compares the harm from allowing intervention at a later stage of the proceedings with what would have occurred no matter when the applicant was allowed to intervene. *Day v. Apoliana*, 505 F.3d 963, 965 (9th Cir. 2007) ("[T]hat the [applicant] is filing its Motion now, rather than earlier in the proceedings, does not cause prejudice . . . since the practical result of its intervention . . . would have occurred whenever the state joined the proceedings."). That is, prejudice in this context is the harm that arises from late intervention as opposed to early intervention. *See, e.g.*, *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (agreeing with the district court's finding of prejudice where the parties had already reached a settlement agreement, because late intervention "would complicate the issues and upset the delicate balance achieved by" the parties' agreement). Without more, additional delay does not cause prejudice; "otherwise every intervention motion would be denied out of hand because it carried with it, almost [by] definition, the prospect of prolonging the litigation." *LULAC*, 131 F.3d at 1304.

Here, the magistrate judge found that WCSPA's intervention would cause prejudice to the parties in this case for two reasons. First, the magistrate judge stated that NRDC, as "a nonprofit organization fighting environmental battles on many fronts," would have to allocate additional resources to this

case if WCSPA were allowed to intervene. Puzzlingly, the magistrate judge did not explain what additional resources NRDC would need to expend that would not have been expended had WCSPA intervened earlier in this case. Second, the magistrate judge stated that WCSPA may attempt to conduct discovery, file motions, and challenge pervious rulings, and thus *possibly* could unravel all the progress of over seven years of litigation.

First, I am unaware that prejudice determinations should be made differently as to "nonprofit organizations" than as to "for profit organizations."[1] This court does not accord privileged status to nonprofit organizations based on some notion of their greater civic virtue when compared to for profit—and thereby taxpaying—organizations. Neither is prejudice to be judged by whether a party is "fighting environmental battles on many fronts" or fishing fish out of many fisheries. The lapidary lettering on the front of the Supreme Court reads: "Equal Justice Under Law," without an asterisked reference that self-styled environmental organizations are more "equal" than other parties because they are "fighting environmental battles"—often of their own choosing.

Second, nor is there any authority for the proposition that the reallocation of resources, without more, may constitute prejudice. If this court were to permit a finding of prejudice merely because a party would be forced to expend more resources to litigate a case, prejudice would exist in every case. *See id.* Thus, it was illogical for the magistrate judge to base his finding as to prejudice on these two reasons.

The notion that WCSPA's motion to intervene could unravel all the progress of the last seven years of litigation is also unpersuasive. Although the general rule is that "intervenors are permitted to litigate fully once admitted to a suit,"

---

[1]Nor why this factor should be considered where the opponent WCSPA is itself also a nonprofit association.

*LULAC*, 131 F.3d at 1304, WCSPA denies that additional discovery is necessary and that it could challenge any prior rulings. But "neither [the magistrate judge's] speculation nor [WCSPA's] reassurance can be dispositive of the timeliness issue" with respect to prejudice. *See id.*

On the issue of prejudice, I find our decision in *LULAC* instructive. In *LULAC*, public interest groups and individual citizens sued in the Central District of California for declaratory and injunctive relief to bar California state officials from enforcing provisions of Proposition 187, which required, *inter alia*, that foreign citizens present in California without proper immigration status be denied social services, health care, and education benefits. *Id.* at 1300-01. After the district court granted partial summary judgment to the plaintiffs, a foundation that helped draft and sponsor Proposition 187 moved to intervene. *Id.* at 1301. The district court summarily denied the motion, *id.*, and this circuit affirmed on the ground the motion was untimely, *id.* at 1308. As to prejudice, we held:

> [I]n a case like this one, in which the proposed intervenor waited twenty-seven months before seeking to interject itself into the case, only to move the court for full-party participation at a time when the litigation was, by all accounts, beginning to wind itself down, we believe that the additional delay caused by the intervenor's presence is indeed relevant to the timeliness calculus, and counsels against granting [the proposed intervenor's] motion.

*Id.* at 1304. In this case, by contrast, WCSPA did not wait to intervene to test the propriety of the challenged 2009-10 specifications; it sought to intervene two days after the magistrate judge granted NRDC leave to file the Fifth Amended Complaint, which challenged those specifications for the first time ever, and obviously, the first time in this case. This was significant because, prior to the filing of the Fifth Amended Complaint, NRDC had consistently challenged earlier specifi-

cations in separate actions and, beginning in 2002, WCSPA had consistently intervened in those separate actions.

Moreover, there was some discussion at oral argument as to whether WCSPA would withhold consent to the magistrate judge's jurisdiction and therefore force a transfer to another judge who would need to familiarize himself with this case. This possibility cannot support a finding of prejudice here. Not only is the point speculative, but it has "little to do with timeliness." *Oregon*, 745 F.2d at 553. Nothing suggests this possibility is "materially different now than [it] would have been had [WCSPA] sought to intervene a decade or [so] ago." *See id.* I therefore find no inferences which can be drawn from the record for holding that WCSPA's intervention would prejudice the existing parties due to the passage of time.

## C. Reason for and length of delay

The final factor that bears on the timeliness of a motion to intervene is the "the length of and the reason for its delay." *LULAC*, 131 F.3d at 1304. To assess the timeliness of a motion to intervene, the crucial date is not the date the applicant learned of the case, but rather "the date that the applicant should have been aware its interests would no longer be protected adequately by the parties." *Id.* (internal quotation marks and brackets omitted). The applicant's failure adequately to explain the reason for its delay in moving to intervene may weigh even more heavily than the delay itself in finding the motion untimely. *See id.*

Here, the magistrate judge found that WCSPA waited over seven years from the time NRDC filed the original complaint in 2001, and over four years from the time we highlighted—in *NRDC*, 421 F.3d at 878—the economic impact of rebuilding plans on fishing communities, before WCSPA moved to intervene in response to the Fifth Amended Complaint. The magistrate judge also found that WCSPA gave no reason for its delay, but merely denied that there had been any delay. But

WCSPA was correct to insist that it did not delay; WCSPA moved to intervene only two days after the magistrate judge granted NRDC leave to file the Fifth Amended Complaint.

As noted above, in the Fifth Amended Complaint NRDC raises new issues not mentioned in the previously operative complaint—it challenged the 2009-10 specifications, as opposed to mere Groundfish Plan amendments. In so doing, NRDC fundamentally altered WCSPA's interest in this case because by challenging the 2009-10 specification, NRDC challenged specific quotas on the amount of each overfished groundfish species that may be fished—and therefore processed—in 2009 and 2010. This bears far more heavily and directly on the ability of WCSPA's members to earn their livelihood processing fish than the Groundfish Plan amendment. These new issues triggered WCSPA's right to intervene. Whereas WCSPA had been content to participate in this case as an amicus, it consistently intervened in separate actions that challenged the specifications/quotas. The most reasonable inference from this pattern of litigation is that WCSPA concluded that NMFS could adequately protect WCSPA's interests as to Groundfish Plan amendments at issue in this case, but that NMFS could not adequately protect WCSPA's interests as to specifications at issue in the other actions.

Thus, WCSPA had no cause to intervene in this case until the filing of the Fifth Amended Complaint. Given the pattern of litigation set out above, in which NRDC challenged successive Groundfish Plan amendments in this case and annual/biennial specifications in separately filed actions, WCSPA had no reason to know that NRDC would one day challenge the 2009-10 specifications not by continuing its practice of commencing a separate action, but by amending its complaint in this case. WCSPA therefore had no reason to intervene in this case prior to the filing of the Fifth Amended Complaint. *See Alisal*, 370 F.3d at 923 ("A party must intervene when he knows or has reason to know that his interests might be

adversely affected by the outcome of litigation." (internal quotation marks omitted)); *cf. United States v. Washington*, 86 F.3d 1499, 1506 (9th Cir. 1996) ("A failure to realize that one's interests are in jeopardy until very late in the proceedings may make a late motion to intervene 'timely.' ").

Accordingly, the magistrate judge's finding that WCSPA's motion to intervene in this case was long delayed, for no apparent reason, is without support in inferences that may be drawn from facts in the record. Thus, in light of all the factors that bear on timeliness, the magistrate judge abused his discretion when he denied WCSPA's motion to intervene as untimely.

## III.

For the reasons set out above, I conclude that the case is capable of repetition and the magistrate judge erred when he denied WCSPA's motion to intervene as of right. I therefore respectfully dissent.